IN RE TRUST OF MONROE D. ROSENBERG, DECEASED.
MARILYN J. TIPP, APPELLANT AND CROSS-APPELLEE, V.
WILLIAM L. REINBRECHT, SUCCESSOR TRUSTEE AND PERSONAL
REPRESENTATIVE, APPELLEE AND CROSS-APPELLEE, AND
MAYNARD ROSENBERG, APPELLEE AND CROSS-APPELLANT.
727 N.W.2d 430

Filed February 9, 2007.   No. S-05-757.

Jerry W. Katskee and Melvin R. Katskee, of Katskee, Henatsch & Suing, for appellant.

Howard N. Epstein and Steven J. Riekes, of Marks, Clare & Richards, L.L.C., for appellee Maynard Rosenberg.

William L. Reinbrecht, of Car & Reinbrecht, P.C., L.L.O., pro se.

Heavican, C.J., Wright, Gerrard, Stephan, McCormack, and Miller-Lerman, JJ.

Stephan, J.

In 1984, Monroe D. Rosenberg executed a last will and testament and a trust agreement. He died on December 15, 2001, survived by his wife, Helen Brown Rosenberg, and his three adult children from a previous marriage: Marilyn Tipp, Maynard Rosenberg, and Howard Rosenberg. This case involves a dispute

among the three children regarding Tipp's handling of various assets in her capacity as successor trustee. The principal issue is whether, upon Monroe's death, certain property passed to Tipp in her individual capacity, as she contends, or in her capacity as trustee, as claimed by Maynard and Howard. In trust administration proceedings initiated by Maynard, the county court for Douglas County removed Tipp as trustee, appointed a successor trustee, and determined that certain life insurance proceeds, accounts payable on death to Tipp, and assets held jointly by Monroe and Tipp became trust assets upon Monroe's death. Tipp perfected this appeal, and Maynard has cross-appealed. We reverse the determination as to the ownership of the disputed property, but affirm in all other respects.

## I. BACKGROUND

### 1. EXECUTION OF WILL AND TRUST AGREEMENT

In the trust agreement dated July 25, 1984, Monroe named himself as both grantor and trustee, and he executed the agreement in both capacities. The trust agreement named Tipp as successor trustee, but she did not sign the document. The trust agreement included the following provisions, which are pertinent to the issues presented in this appeal.

ARTICLE I

TRUST ESTATE

1. Sources of Property. Promptly after the execution of this agreement, the Grantor intends to designate the Trustee as the beneficiary of certain policies of insurance upon the life of the Grantor. The Grantor at any time also may name the Trustee as the beneficiary of additional policies of insurance upon the life of the Grantor or upon the lives of others, may have various death benefits made payable to the Trustee, and may transfer property to the trust during the Grantor's lifetime and by the Grantor's will. The Trustee at any time also may receive property of any kind from persons other than the Grantor.

2. Meaning of "Trust Estate". The life insurance proceeds and any other property which the Trustee at any time may receive or acquire for the purposes of the trusts created by this agreement shall constitute and for convenient reference

collectively are referred to in this agreement as the "trust estate" . . . .

. . . .

## ARTICLE III
## LIFE INSURANCE POLICIES

. . . .

3. Collection of Proceeds. Upon the death of the insured, the Trustee shall use its best efforts to collect the proceeds of any policy of life insurance of which the Trustee is the beneficiary and of which the Trustee has knowledge . . . .

. . . .

## ARTICLE VI
## DIVISION UPON GRANTOR'S DEATH

1. Establishment of Family Trust. Subject to the provisions of Article V, upon Grantor's death, the Trustee shall transfer the trust estate as then constituted (including but not limited to any insurance proceeds, death benefits, or property receivable by the Trustee by reason of the Grantor's death and any property receivable by the Trustee pursuant to the will of the Grantor) into a separate trust, to be known as the "Family Trust" . . . .

The trust agreement also provided that the assets of the family trust were to be divided equally among the children living at the time of Monroe's death and the issue of any deceased child. The stated objective of the family trust was to ensure that "the Grantor's issue will enjoy the benefits of and ultimately receive a substantial portion of the Grantor's estate."

In his will executed on August 3, 1984, Monroe described himself as a widower with three children from a former marriage and stated that he had intentionally made no provision in the will "for any children of mine nor for HELEN BROWN of Las Vegas, Nevada, who I am presently contemplating marrying." The will provided that Monroe could prepare a separate written statement or list for the purpose of disposing of various items of tangible personal property and that if he did so, the listed items were devised to the listed devisees who survived him by more than 60 days. The will further provided: "I devise all the residue of my estate, wherever situated, whether real or personal, tangible or intangible, together with all insurance policies relating thereto,

to the trustee under that certain trust agreement dated July 25, 1984 wherein I am referred to as Grantor." The will named Tipp as personal representative of Monroe's estate. On March 7, 1985, Monroe executed a handwritten statement in which he devised "all tangible items of personal property including, without limitation, all household goods, furniture and personal effects" to Tipp.

## 2. PROPERTY HELD PRIOR TO DEATH

After executing the will and trust agreement, Monroe married Helen. In anticipation of their marriage, they executed an agreement that provided each would retain their separate assets. They resided in one-half of a duplex in Omaha which Monroe owned as a tenant-in-common with Louie and Betty Fedman, who resided in the other half of the structure. There was a written agreement whereby the property was not to be sold until after Monroe and the Fedmans were deceased. At the time of his death, Monroe's original undivided one-half interest in the property was held by the trust. Both Louie Fedman and Helen survived Monroe and continued living in their respective portions of the duplex after his death. Helen moved from the residence at the end of January 2002, and Louie Fedman continued to reside in his portion of the duplex.

During Monroe's lifetime, he had certain property titled in the name of the Monroe D. Rosenberg Trust. This included his interest in the duplex and cash and security accounts at several brokerage firms. Other property was held in joint accounts. This included a checking account at U.S. Bank, held in the names of Monroe, Helen, and Tipp, and Omaha Public Power District bonds and U.S. Treasury notes, held in the names of Monroe and Tipp. Additional accounts at First Federal Lincoln Bank and Nebraska State Bank were held in Monroe's name, with Tipp designated as the payable-on-death (POD) beneficiary, and accounts at Pentagon Federal Credit Union were held in Monroe's name, with Tipp designated as the beneficiary. Monroe also had a life insurance policy issued by MetLife in which Tipp was named as beneficiary.

Several days prior to his death, Monroe asked Howard to bring him his checkbook because he wanted to write a $10,000 check to Helen. Howard obtained the checkbook and wrote the check

payable to Helen, as Monroe had directed. Monroe then signed the check. The check was drawn on the First Federal Lincoln Bank account, on which Tipp was designated the POD beneficiary.

### 3. ACTIONS TAKEN BY TIPP AS TRUSTEE

After Monroe's death, Tipp attempted to marshal Monroe's nonprobate assets. With the assistance of financial consultants, Tipp segregated the assets held in the name of the trust from those held jointly or POD to her. She transferred the assets held in various accounts in the name of the trust to a single broker-age account opened in her name as trustee for the Monroe D. Rosenberg Trust. She then directed the trust assets to be divided equally into three separate accounts, each individually titled in the names of Tipp, Maynard, and Howard. Maynard and Howard were notified of the existence of these accounts. Tipp transferred the remaining assets, which she deemed not to be trust property, to an account in her name at another brokerage company.

After Helen vacated the portion of the duplex where she and Monroe had resided, Tipp found a tenant to reside in the space for 1 year rent free in exchange for cleaning, repairing, and performing other services.

In April 2002, Tipp transferred $10,000 from the trust account to her personal account. She did so because the check in that amount which Monroe had written to Helen shortly before his death was drawn on an account which was payable to Tipp upon Monroe's death. Tipp reasoned that Monroe was heavily medicated at the time he wrote the check, that he had not indicated which account he wished to use to make the gift to Helen, and that she "reimbursed" herself from the trust account so that she and her brothers would share the expense equally from their inheritance, as she thought Monroe would have intended.

### 4. PROCEEDINGS IN COUNTY COURT

In April 2002, Maynard initiated trust administration pro-ceedings in county court pursuant to Neb. Rev. Stat. § 30-2806 (Reissue 1995) (repealed by 2003 Neb. Laws, L.B. 130, § 143, operative Jan. 1, 2005). Maynard sought to have Tipp removed as the successor trustee and sought a determination of the proper administration and distribution of trust assets. After conduct-ing evidentiary hearings on November 22 and December 30, the

county court removed Tipp as successor trustee and replaced her with William L. Reinbrecht in an order entered on December 31. Tipp did not immediately appeal this order.

On March 13, 2003, Reinbrecht filed an inventory of assets that Monroe owned at this death. On April 7, he filed a "Petition for Instruction and Application for Review of Fees," in which he requested "guidance" from the court regarding several issues, including whether the various assets Tipp acquired at Monroe's death should be treated as trust assets and returned to the trust. Also on April 7, Reinbrecht filed an application for approval of his own fees and costs in the amount of $11,355.12. Finally, Reinbrecht filed a report in which he made numerous recommendations to the court. Those recommendations addressed many of the issues raised by Reinbrecht in his April 7 "petition for instruction."

Tipp filed a resistance to Reinbrecht's report, in which she took exception to most of his recommendations. Maynard and Howard also filed an "application for instruction" in which they posed several questions to the court and advanced various arguments. In particular, Maynard and Howard asked whether Tipp should be required to pay the legal fees they incurred in bringing the trust administration proceedings. Tipp filed a resistance, generally arguing against Maynard and Howard's position.

The county court held a hearing on April 28, 2003. No witnesses testified, and only one exhibit was offered and received into evidence. The parties presented brief arguments, and the court announced its findings after having "reviewed all the filings." The court's findings were reduced to a written order, prepared by Reinbrecht, entered on May 1. The order provided, among other things, that Tipp should not be surcharged as trustee for her management of the duplex, that Tipp should repay the trust estate the $10,000 she paid herself from trust funds, that Tipp should return the MetLife insurance proceeds, bank accounts, bonds, and treasury notes to the trust, and that the trust estate should pay the attorney fees Tipp incurred while she was trustee. The court ordered that the trust pay Reinbrecht's fees but denied the application of Maynard and Howard for payment of their attorney fees by the trust. Tipp subsequently appealed.

In her appeal, Tipp assigned that the county court erred in removing her as trustee in its order of December 31, 2002. We

held that Tipp's failure to timely appeal that order precluded our consideration of that issue. *In re Trust of Rosenberg*, 269 Neb. 310, 693 N.W.2d 500 (2005) (*Rosenberg I*). Tipp also assigned error with respect to the order entered on May 1, 2003, following the hearing held on April 28. We concluded that the county court failed to hold a formal evidentiary hearing prior to entry of the May 1 order, and we therefore held the order was not supported by competent evidence. We vacated, and remanded to the county court with directions to hold an evidentiary hearing. *Id.*

On remand, the county court held an evidentiary hearing, at which the parties stipulated that all testimony and exhibits received during the hearings held on November 22 and December 30, 2002, could be received with respect to the remaining unresolved issues. Tipp attempted to present expert testimony from Thomas M. Moore regarding her handling of the trust assets. The court sustained Maynard's objection but permitted Moore's testimony in the form of an offer of proof. Reinbrecht testified generally as to how he had handled the assets of the trust while he was trustee. In a separate written order, the court excluded Moore's testimony. An exhibit itemizing the attorney fees claimed by Maynard and Howard was offered and received.

In an order entered on May 24, 2005, the county court resolved the issues in the same manner as in its prior order of May 1, 2003. On the same day, the court entered a separate order denying Tipp's motion to remove Reinbrecht as successor trustee. Tipp perfected this appeal from both orders. We moved the appeal to our docket on our own motion pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## II. ASSIGNMENTS OF ERROR

Tipp assigns, restated and renumbered, that the county court erred in (1) finding that the proceeds which Tipp received and retained as the beneficiary of the MetLife insurance policy were assets of the trust and ordering her to reimburse the trust estate in that amount; (2) finding that the bonds, treasury notes, and accounts held jointly by Tipp and Monroe at the time of Monroe's death and retained by Tipp were assets of the trust and ordering Tipp to reimburse the trust estate; (3) finding that the accounts

owned by Monroe and payable or transferable to Tipp on his death and retained by Tipp were assets of the trust and ordering Tipp to reimburse the trust estate for such property; (4) ordering Tipp to reimburse the trust estate for the $10,000 transfer she made as "reimbursement" for the gift to Helen; (5) failing to remove Reinbrecht as successor trustee; (6) approving Reinbrecht's fees; and (7) excluding the proffered expert testimony of Moore.

On cross-appeal, Maynard assigns, restated and renumbered, that the county court erred in (1) ordering that the attorney fees Tipp incurred while she was acting as trustee were payable from the trust, (2) denying his application for attorney fees to be paid from the trust, and (3) not surcharging Tipp for alleged mismanagement of the trust.

### III. STANDARD OF REVIEW

■ Appeals involving the administration of a trust are equity matters and are reviewable in an appellate court de novo on the record. *In re R.B. Plummer Memorial Loan Fund Trust*, 266 Neb. 1, 661 N.W.2d 307 (2003).

■ In the absence of an equity question, an appellate court, reviewing probate matters, examines for error appearing on the record made in the county court. *In re Trust Created by Inman*, 269 Neb. 376, 693 N.W.2d 514 (2005); *In re Trust of Rosenberg*, 269 Neb. 310, 693 N.W.2d 500 (2005). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.* In instances when an appellate court is required to review cases for error appearing on the record, questions of law are nonetheless reviewed de novo on the record. *Stover v. County of Lancaster*, 271 Neb. 107, 710 N.W.2d 84 (2006). An appellate court, in reviewing a district court judgment for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings. *Schwarting v. Nebraska Liq. Cont. Comm.*, 271 Neb. 346, 711 N.W.2d 556 (2006).

■ On appeal, a trial court's decision awarding or denying attorney fees will be upheld absent an abuse of discretion. *Rapp v. Rapp*, 252 Neb. 341, 562 N.W.2d 359 (1997). When an attorney

fee is authorized, the amount of the fee is addressed to the discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of an abuse of discretion. *Id.*

## IV. ANALYSIS

### 1. TIPP'S APPEAL

### (a) Disputed Property

#### (i) Life Insurance Proceeds

Tipp contends that the county court erred in ordering her to return to the trust estate all of the proceeds received by her from the $25,000 life insurance policy on the life of Monroe held with MetLife. The policy itself is not in the record. Attached to Tipp's annual accounting, filed with the court on December 30, 2002, and received in evidence, is a report prepared by a certified fraud examiner who analyzed the assets held by Monroe at the time of his death. The report states that Tipp was designated as the beneficiary of a MetLife insurance policy, that benefits were paid to her in the amount of $23,060.49 on January 22, 2002, and that these funds were subsequently deposited by Tipp in one of her accounts. In a report filed April 7, 2003, Reinbrecht states that Tipp "was paid $25,000.00 as the beneficiary of a life insurance policy from MetLife on the life of Monroe D. Rosenberg."

■ Generally, life insurance benefits are a type of nonprobate transfer on death which is nontestamentary. See, Neb. Rev. Stat. § 30-2715 (Reissue 1995); *In re Estate of Reynolds*, 131 Neb. 557, 268 N.W. 480 (1936). The issue here is whether a trust was created with respect to the life insurance proceeds. Under the Nebraska Uniform Trust Code (NUTC), "[a] trust may be created by: (1) transfer of property to another person as trustee during the settlor's lifetime or by will or *other disposition taking effect upon the settlor's death.*" (Emphasis supplied.) Neb. Rev. Stat. § 30-3827 (Cum. Supp. 2006). With regard to life insurance, we have generally recognized that a trust may be created in the death benefits. For instance, the insured may create a life insurance trust, where the trustee is named in the policy to hold the death benefits in trust for the benefit of others. See, *In re Estate of Reynolds, supra*; 46A C.J.S. *Insurance* § 1423 (1993). See, also, 4 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d

§ 58:8 (1996). Likewise, a policy beneficiary may expressly agree to hold the death benefits as trustee for the benefit of others. See *Estate of Devries v. Hawkins*, 70 Neb. 656, 97 N.W. 792 (1903). Whether a trust has been created is a question of fact. The interpretation of the words of such a trust is a question of law. *In re Estate of West*, 252 Neb. 166, 560 N.W.2d 810 (1997).

The trust agreement provides:

> Promptly after the execution of this agreement, the Grantor intends to designate the Trustee as the beneficiary of certain policies of insurance upon the life of the Grantor. The Grantor at any time also may name the Trustee as the beneficiary of additional policies of insurance upon the life of the Grantor or upon the lives of others, may have various death benefits made payable to the Trustee, and may transfer property to the trust during the Grantor's lifetime and by the Grantor's will.

The trust agreement does not specifically refer to the MetLife policy, and the record does not reflect whether the policy was even in existence when the trust agreement was executed. There is no evidence that Monroe ever designated the trust or anyone acting in the representative capacity as trustee as the beneficiary of the policy. The record includes an inventory of Monroe's estate filed by Reinbrecht indicating that there was no insurance payable to the estate.

The trust agreement reflects Monroe's objective to ensure that his "issue will enjoy the benefits of and ultimately receive a substantial portion of the Grantor's estate." The agreement provides that upon Monroe's death, trust assets were to be distributed equally to his children and their issue. However, it is apparent from the record that during his lifetime, Monroe placed some but not all of his assets in the trust. He clearly could have designated "the Trustee" as the beneficiary of the MetLife policy, but there is no evidence that he did so. Tipp's obligation upon Monroe's death was to "transfer the trust estate as then constituted" to a separate "Family Trust" to be administered in accordance with the terms of the trust agreement. The "trust estate" is defined in the agreement as "[t]he life insurance proceeds and any other property which the Trustee at any time may receive or acquire *for the purposes of the trusts created by this agreement . . . .*" (Emphasis

supplied.) We find nothing in the record reflecting a declaration by Monroe that Tipp was to hold the life insurance benefits as trustee. See § 30-3827(2). There is no competent evidence upon which to conclude that the life insurance benefits paid to Tipp were a part of the "trust estate" as defined in the trust agreement, and the county court therefore erred in ordering Tipp to pay the proceeds to Monroe's estate.

### (ii) Jointly Held Property

Reinbrecht's report states that Monroe had owned certain property jointly with Tipp, including Omaha Public Power District bonds and certain U.S. Treasury notes. The court ordered that Tipp pay the proceeds of these instruments to the estate. The actual bonds and notes are not in the record, but the parties apparently do not dispute that these assets were jointly held as indicated in Reinbrecht's report.

Neb. Rev. Stat. § 30-2723(a) (Reissue 1995) provides in pertinent part that "on death of a party sums on deposit in a multiple-party account belong to the surviving party or parties." As to jointly held property not subject to this provision, the common-law rule is that property owned in joint tenancy passes by reason of the nature of the title to the surviving joint tenant upon the death of the other and does not pass by virtue of the provisions of the will of the first joint tenant to die. *Norwest Bank Neb. v. Katzberg*, 266 Neb. 19, 661 N.W.2d 701 (2003); *Heinold v. Siecke*, 257 Neb. 413, 598 N.W.2d 58 (1999).

Based on these principles, the bonds and notes passed to Tipp immediately upon Monroe's death and did not become a part of his residuary estate. The contested question is whether Tipp took title in her individual capacity, or as trustee. Unless Tipp acquired the assets "for the purposes of the trusts" created by Monroe, they are not a part of the "trust estate" as defined in the trust agreement. Here, there is no evidence that Tipp acquired the bonds and notes in question for the purposes of the trust, i.e., in her capacity as trustee. Indeed, Howard testified that Monroe had, in several conversations, expressed his belief that Tipp should receive "additional monies outside of . . . an equal split" in part because of "her good works as a daughter" and to compensate her for serving as trustee. There is no competent evidence upon which to conclude

that the assets held jointly in the names of Monroe and Tipp were intended by Monroe to be a part of the trust estate upon his death, and the county court therefore erred in ordering Tipp to pay the proceeds of these bonds and notes to the trust estate.

Reinbrecht's report further identifies a joint account at U.S. Bank in the names of Monroe, Helen, and Tipp. The court ordered Tipp to pay the proceeds of this account to Helen, as Monroe's surviving spouse. In her brief, Tipp concedes that "Helen Rosenberg should receive the entire amount held in that account pursuant to the Successor Trustee's conclusions at page 15 of his Report. In fact, Helen Rosenberg took the proceeds and paid some remaining bills of the marriage." Brief for appellant at 28. Based on this concession, we conclude that the county court did not err in requiring Tipp to pay the proceeds of this account to Helen, as she represents that she has already done.

### (iii) Payable-on-Death Accounts

Reinbrecht's report identifies accounts at First Federal Lincoln Bank and Nebraska State Bank which were payable to Tipp upon Monroe's death. The record includes the customer agreement for the First Federal Lincoln Bank account dated October 2, 2000, identifying Monroe as the "Payable on Death Party" and Tipp as the "Payable on Death Designee." There are no account records for the Nebraska State Bank account, but the parties do not dispute Reinbrecht's characterization of both accounts as bearing a POD designation. The county court ordered Tipp to pay the proceeds of these accounts to the estate.

Under Nebraska law of nonprobate transfers, an "account" is defined as "a contract of deposit between a depositor and a financial institution" and includes checking accounts and certificates of deposit. Neb. Rev. Stat. § 30-2716(1) (Reissue 1995). Such accounts may have a POD designation. Neb. Rev. Stat. § 30-2718(a) (Reissue 1995). When an account bears a POD designation, "[o]n death of the sole party . . . sums on deposit belong to the surviving beneficiary . . . ." § 30-2723(b)(2). "A right of survivorship arising from . . . a POD designation . . . may not be altered by will." Neb. Rev. Stat. § 30-2724(b) (Reissue 1995).

While the trust agreement provided that Monroe, as grantor, "may have various death benefits made payable to the Trustee,"

it did not require that he do so. He was free to make Tipp the POD designee in her individual capacity. The customer agreement for the First Federal Lincoln Bank account identifies Tipp by name with no reference to her representative capacity as successor trustee. There is no evidence that the POD designation on the Nebraska State Bank account identified Tipp as the POD designee in her representative capacity as trustee. We conclude that there is no competent evidence upon which to find that the assets held in the two POD accounts were intended by Monroe to be a part of the trust estate upon his death, and the county court therefore erred in ordering Tipp to pay the proceeds of these accounts to the estate.

### (iv) Beneficiary Accounts

In her brief, Tipp argues that the county court erred in requiring her to pay over to the trust the amounts she received upon Monroe's death as beneficiary of accounts at Pentagon Federal Credit Union. However, she did not specifically assign error with respect to this argument. Maynard contends that this precludes our consideration of this issue under the principle that in the absence of plain error, an appellate court considers only claimed errors which are both assigned and discussed. *In re Petition of SID No. 1*, 270 Neb. 856, 708 N.W.2d 809 (2006); *State v. Carter*, 255 Neb. 591, 586 N.W.2d 818 (1998). We disagree.

Initially, we note that the record is ambiguous as to the exact status of the accounts held at Pentagon Federal Credit Union. Some evidence suggests that the accounts were jointly held by Monroe and Tipp, while other evidence suggests that the accounts were POD accounts to Tipp. In any event, the status of these accounts does not preclude our resolution of this issue. Tipp's other assignments of error fairly raise issues of whether the county court erred in ordering that jointly held property and POD accounts be included in the trust estate. On the facts of this case, we consider the issue with respect to the accounts at Pentagon Federal Credit Union to be encompassed in those assignments of error. We therefore conclude, for the same reasons we articulated for the jointly held property and the POD accounts, that the county court erred in ordering Tipp to pay the proceeds of the accounts held at Pentagon Federal Credit Union to the trust estate.

### (v) Tangible Personal Property

■ Tipp also argues in her brief that the county court erred in requiring her to return to the trust the tangible personal property which she contends was bequeathed to her by a separate written statement as contemplated in Monroe's will. However, she did not specifically assign error with respect to this argument. Maynard contends that this precludes our consideration of this issue under the principle that in the absence of plain error, an appellate court considers only claimed errors which are both assigned and discussed. *In re Petition of SID No. 1, supra; State v. Carter, supra.* We agree. None of Tipp's assignments of error raise any issue with respect to tangible personal property, and we therefore do not address her argument on that subject.

### (b) Reimbursement of Monroe's Gift to Helen

■ Monroe's $10,000 check payable to Helen, written days before his death, was drawn on the First Federal Lincoln Bank account which was POD to Tipp. Under Nebraska law, "[a] beneficiary in an account having a POD designation has no right to sums on deposit during the lifetime of any party." Neb. Rev. Stat. § 30-2722(c) (Reissue 1995). The owner retains sole ownership, and only the owner may withdraw the proceeds or change the named beneficiary during the owner's lifetime. *Crosby v. Luehrs,* 266 Neb. 827, 669 N.W.2d 635 (2003). Thus, Monroe's act of making a gift from a POD account created no right of reimbursement in Tipp, the POD beneficiary, after Monroe's death. The county court did not err in ordering Tipp to repay the $10,000 reimbursement she made to herself from the assets of the trust.

### (c) Failure to Remove Reinbrecht as Successor Trustee

Tipp contends that the county court erred in not removing Reinbrecht and replacing him with a successor trustee "who is disinterested in the outcome and neutral as to the interests of the various beneficiaries." Brief for appellant at 40. Under the NUTC, "[i]f a trust has two or more beneficiaries, the trustee shall act impartially in investing, managing, and distributing the trust property, giving due regard to the beneficiaries' respective interests." Neb. Rev. Stat. § 30-3868 (Cum. Supp. 2006). As we noted in *Rosenberg I,* while this case began before the NUTC

became operative, we can apply this law unless the application "would substantially interfere with the effective conduct of the judicial proceedings or prejudice the rights of the parties." Neb. Rev. Stat. § 30-38,110(a)(3) (Cum. Supp. 2006). Tipp relies on pre-NUTC case law generally holding that trustees should be impartial between all beneficiaries. See, *Burnham v. Bennison,* 126 Neb. 312, 253 N.W. 88 (1934); *Northern Trust Co. v. Heuer,* 202 Ill. App. 3d 1066, 560 N.E.2d 961, 148 Ill. Dec. 364 (1990); *Matter of Duke,* 305 N.J. Super. 408, 702 A.2d 1008 (1995). In essence, Tipp's argument is equivalent to the law codified in the NUTC, specifically at § 30-3868.

Furthermore, under the Nebraska Uniform Prudent Investor Act, "[i]f a trust has two or more beneficiaries, the trustee shall act impartially in investing and managing the trust assets, taking into account any differing interests of the beneficiaries." Neb. Rev. Stat. § 8-2207 (Reissue 1997). While § 8-2207 has been repealed, it was repealed by the same legislative bill that enacted § 30-3868. See 2003 Neb. Laws, L.B. 130, §§ 68 and 143, operative Jan. 1, 2005. At all times relevant to this case, the trustee had a statutory duty of impartiality, either under the Nebraska Uniform Prudent Investor Act or the NUTC. Therefore, application of the NUTC will not substantially prejudice the rights of Tipp and should apply.

Tipp does not point to any evidence indicating that Reinbrecht has violated his duty of impartially with respect to the three trust beneficiaries, and we find none in our review of the record. The record indicates Reinbrecht has diligently attempted to manage the assets of the trust. There is no indication, nor does Tipp argue, that Reinbrecht has or will divide the trust assets in any other way than equally between Tipp, Maynard, and Howard. Tipp's disagreement with Reinbrecht arises from his efforts to marshal assets into the trust that Tipp believes belong to her personally. While we agree with most of Tipp's arguments in this regard, as noted above, this does not lead to a conclusion that Reinbrecht violated his duty of impartiality in arguing to the contrary. Reinbrecht owes no duty of impartiality to Tipp in her individual capacity, only as a cobeneficiary of the trust. We conclude that there is competent evidence to support the decision of the county court to deny Tipp's motion to remove Reinbrecht as trustee.

### (d) Approval of Reinbrecht's Fees

Tipp assigns that the county court erred in approving the payment for services rendered by Reinbrecht as trustee and personal representative from the estate. We review this equity question pertaining to trust administration de novo on the record. See *In re R.B. Plummer Memorial Loan Fund Trust*, 266 Neb. 1, 661 N.W.2d 307 (2003). Based upon such review, we find no error in the approval of Reinbrecht's fees.

### (e) Exclusion of Moore's Testimony

Tipp argues that the county court erred in excluding the testimony of Moore, her designated expert witness, at the May 2005 hearing. In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by such rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility. *Roth v. Wiese*, 271 Neb. 750, 716 N.W.2d 419 (2006). The admission of expert testimony is ordinarily within the trial court's discretion, and its ruling will be upheld absent an abuse of discretion. *Ford v. Estate of Clinton*, 265 Neb. 285, 656 N.W.2d 606 (2003).

Tipp had designated Moore an expert witness based on his background as a long-time trust administrator and head of a commercial trust department. Tipp stated that Moore was prepared to testify how he, as a commercial trust officer, would have handled Monroe's nonprobate assets had they come into his possession. Maynard objected to Moore's testimony, claiming that his testimony would not address factual issues that would assist the trier of fact and that he was not qualified as an expert due to his absence from trust administration. The court sustained the objection but allowed Moore to testify as an offer of proof. In a written order, the court excluded Moore's testimony, finding:

> Moore's testimony will not be helpful to the trier of fact because it consists only of an opinion which is nothing more than an expression of how the Court should decide this case, he did not review Nebraska law, and has not kept up to date and knowledgeable about the law of this case since 1994, and his testimony cannot be allowed because it is expert testimony concerning a question of law, and will concern the application of law in determining how the disputed

assets should be distributed to the heirs and beneficiaries of [Monroe]. That testimony intrudes into the province of the Court and is improper.

We conclude that the county court did not abuse its discretion in excluding Moore's testimony.

## 2. Maynard's Cross-Appeal

### (a) Approval of Tipp's Attorney Fees

On cross-appeal, Maynard argues that the county court erred in ordering Tipp's attorney fees to be paid from the trust. On appeal, a trial court's decision awarding or denying attorney fees will be upheld absent an abuse of discretion. *Rapp v. Rapp*, 252 Neb. 341, 562 N.W.2d 359 (1997). When an attorney fee is authorized, the amount of the fee is addressed to the discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of an abuse of discretion. *Id.*

Attorney fees and expenses will ordinarily be allowed a trustee where they were incurred for the benefit of the estate. *Rapp v. Rapp, supra*; *Linn v. Linn*, 146 Neb. 666, 21 N.W.2d 283 (1946). "In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust that is the subject of the controversy." Neb. Rev. Stat. § 30-3893 (Cum. Supp. 2006). Where a trustee's defense of his or her acts is substantially successful, the trustee is ordinarily entitled to recover the reasonable costs necessarily incurred in preparing his or her final account and in defending it against objections. See *Rapp v. Rapp, supra*.

In this case, Maynard contends that the attorney fees and expenses Tipp incurred as a result of Maynard's legal action serve as a detriment to the estate, not as a benefit. He argues that due to her failures as trustee, the county court removed Tipp as trustee and required her to return to the trust the life insurance proceeds, bank accounts, bonds, treasury notes, and personal property.

In its oral pronouncement removing Tipp as trustee, the court stated:

The real problem in this case was the Trustee was put in the really bad position of trying to decipher which assets were hers individually and those which belonged to the Trust. Even if she did everything properly, it still has that same appearance that there's always something to have been done wrong. And I think that the one part that caught my attention the most was when she was asked directly by one of her siblings about certain assets that were hers from some of those p.o. death accounts; her response was that it was none of his business what was left to her.

Well, that is exactly what engenders the kind of problems we've had here today. It's not the open and fair treatment that a beneficiary would expect from a trustee and certainly leaves everyone the impression that something is being hidden. I don't know if anything ever was. I just don't know. And that's probably the real problem we have with all the beneficiaries here. I'm not saying she did anything wrong; quite the opposite. I'm saying that she just didn't make a full disclosure, so everybody would see that she did nothing wrong.

My real problem is that after our November 22nd hearing, we have a problem with what the Trustee then did, which was nothing. The interim accounting was not produced and filed; the bond was not filed until December 13th, which was almost a month after that. I find that to be something that I can't excuse.

Although in deciding to remove Tipp as trustee it appears that the county court was motivated by Tipp's lack of urgency, it did not find an intentional breach of her fiduciary duties. The record discloses that Tipp did marshal those assets which she believed to be trust property and caused partial distributions to be made to the trust beneficiaries. We conclude that the court did not abuse its discretion in ordering that Tipp's attorney fees incurred while acting as successor trustee be paid from the trust.

### (b) Maynard's Attorney Fees

Next, Maynard argues that the county court erred in not ordering that his attorney fees be paid from trust funds. Again, we

review for abuse of discretion. See *Rapp v. Rapp*, 252 Neb. 341, 562 N.W.2d 359 (1997). We find none.

### (c) Surcharge

Finally, Maynard argues that the county court erred in failing to surcharge Tipp for her mismanagement of the trust's real estate. In essence, Maynard argues that because Tipp failed to rent the duplex for fair market value, the trust lost a minimum of $9,000 in income, and that Tipp should therefore be surcharged.

It is clear from the record that the portion of the duplex owned by the trust and formerly occupied by Monroe and Helen required significant repairs and cleaning before it could be rented. There is conflicting evidence regarding the cost of such services if contracted, the amount of time it would have taken to prepare the property for rental, and the amount of rental income which could have been realized during Tipp's tenure as trustee. After reviewing Tipp's performance in this regard in considerable detail, Reinbrecht determined that she fulfilled her duties as trustee and recommended that she not be surcharged. The county court accepted this recommendation. Based upon our de novo review of the record, we conclude that this was not error.

### V. CONCLUSION

For the reasons discussed above, we conclude that certain assets received by Tipp following Monroe's death were not included in the trust estate and that the county court erred in ordering her to pay them over to the estate. These assets include the death benefits paid under the MetLife policy, the jointly held Omaha Public Power District bonds, the jointly held U.S. Treasury notes, the POD accounts at First Federal Lincoln Bank and Nebraska State Bank, and the proceeds of the accounts at Pentagon Federal Credit Union. We reverse the judgment of the county court with respect to those assets, but affirm in all other respects. We remand the cause to that court for further proceedings with respect to the administration of the trust.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

CONNOLLY, J., participating on briefs.