Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/15/2025 09:08 AM CDT

Valkyrie Kimball and Richard Kimball II,
appellants, v. Rosedale Ranch, Inc.,
a Nebraska corporation, et al., appellees.

___ N.W.3d ___

Filed August 15, 2025.    No. S-24-707.

1. **Motions to Dismiss: Appeal and Error.** A district court's grant of a motion to dismiss is reviewed de novo.
2. **Judgments: Jurisdiction: Appeal and Error.** A jurisdictional issue that does not involve a factual dispute presents a question of law, which an appellate court independently decides.
3. **Jurisdiction: Standing.** Because the requirement of standing is fundamental to a court's exercise of subject matter jurisdiction, either a litigant or a court can raise the question of standing at any time.
4. **Courts: Jurisdiction.** Under the doctrine of jurisdictional priority, when different state courts have concurrent original jurisdiction over the same subject matter, basic principles of judicial administration require that the first court to acquire jurisdiction should retain it to the exclusion of another court.
5. ____: ____. While jurisdictional priority is not a matter of subject matter or personal jurisdiction, courts should enforce the jurisdictional priority doctrine to promote judicial comity and avoid the confusion and delay of justice that would result if courts issued conflicting decisions in the same controversy.
6. **Motions to Dismiss: Pleadings.** To prevail against a motion to dismiss for failure to state a claim, a plaintiff must allege sufficient facts, accepted as true, to state a claim to relief that is plausible on its face.
7. **Motions to Dismiss: Pleadings: Appeal and Error.** When reviewing an order dismissing a complaint, an appellate court accepts as true all facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the plaintiff's conclusion.
8. **Motions to Dismiss: Pleadings.** As a general rule, when a court grants a motion to dismiss for failure to state a claim, a party should be given

leave to amend absent undue delay, bad faith, unfair prejudice, or futility.

Appeal from the District Court for Lincoln County: Michael E. Piccolo, Judge. Reversed and remanded with direction.

Daniel J. Greco, Terrance O. Waite, and Christine E. Seck, of Waite & McWha Law Firm, for appellants.

ZitaAnne Reno, of Brouillette, Troshynski, Kingston & Jackson, P.C., L.L.O., and John D. Stalnaker, of McGill, Gotsdiner, Workman & Lepp, P.C., L.L.O., for appellees.

Funke, C.J., Miller-Lerman, Cassel, Stacy, Papik, Freudenberg, and Bergevin, JJ.

Papik, J.

Valkyrie Kimball and Richard Kimball II (the Kimball children) believe that their late stepmother, Helen Kimball, wrongfully transferred assets owned by their late father, Richard Kimball, to herself. The Kimball children brought this action in district court against the personal representative of Helen's estate, devisees under Helen's will, and a corporation in which Helen had an interest, claiming that but for the allegedly wrongful transfers, the Kimball children would have received those assets under their father's will. The district court initially dismissed the action, noting that the Kimball children had raised the identical issues in a proceeding in county court. By the time the district court heard the Kimball children's motion to alter or amend its dismissal, however, the county court had dismissed the Kimball children's petition in that court for lack of standing. Even so, the district court stood by its dismissal.

The Kimball children now appeal, arguing that the district court's dismissal was no longer justifiable after the conclusion of the county court proceeding. We agree. And although we find that the complaint failed to state a claim upon which relief could be granted, we find that the Kimball children

should be provided the opportunity to amend their complaint. Accordingly, we reverse the dismissal and remand the cause with direction.

## BACKGROUND

*Complaint of the Kimball Children.*

Because this case turns on the allegations of the Kimball children's complaint, we begin by summarizing it in some detail. The complaint alleged that Helen owned a ranch and that, beginning in 1978 and for many years thereafter, the Kimball children's father, Richard, worked for the ranch as an employee. Eventually, in 1998, Richard married Helen. This was a second marriage for both Richard and Helen, and both had children from their respective first marriages. According to the complaint, after his marriage to Helen, Richard came to own, "together" with Helen, a piece of real property referred to as "the Main House." The complaint also alleged that Richard came to own shares of Rosedale Ranch, Inc., a Nebraska corporation that owned other real property.

In 2009, Richard executed a will; at the same time, Helen executed a mutual and reciprocal will. Richard's will, a copy of which was attached to the complaint as an exhibit, provided in part:

> In the event my spouse survives me, then [I devise] all of my other property[, not including guns and firearms specifically devised to the National Rifle Association,] to my spouse, except any real estate that I may own in my own name. I hereby grant a life estate to my spouse in any real estate which I now own in my own name, and the remainder of said real estate in equal shares to my children [per stirpes].

Richard's will appointed Helen as the personal representative of his estate.

The complaint alleged that Richard was diagnosed with dementia in 2010. A few years later, the complaint asserts, Helen took steps to transfer Richard's interest in the Main House to herself. In August 2013, Richard and Helen deeded

their interest in the Main House to Helen by quitclaim deed. The following month, Richard executed a durable power of attorney naming Helen as his attorney in fact. In July 2014, Richard and Helen filed a quitclaim deed to convey the Main House to Helen individually, with Helen acting as Richard's attorney in fact. Although the complaint provided less detail on this subject, it also indicated that Helen, acting under the power of attorney, transferred personal property owned by Richard to herself. The complaint also alleged that in August 2014, Helen executed a will that explicitly made no provision for Richard.

Richard's cognitive decline continued, and he died in 2018. The complaint alleged that after Richard's death, Helen told the Kimball children that "the value of Richard's estate was low enough" that no probate or administration would be required.

Four years later, Helen died. The Kimball children alleged that they were not notified of Helen's estate administration proceedings and that no real or personal property formerly held by Richard was distributed to them. Instead, the complaint alleged, real and personal property that had been owned by Richard, including the Main House and shares of Rosedale Ranch, was distributed to three children and a grandchild of Helen. The complaint named those children and the grandchild of Helen, one of whom was the personal representative of Helen's estate, as defendants, along with Rosedale Ranch (collectively appellees).

The Kimball children alleged in their complaint that, as devisees under Richard's will, they had an "expectancy" in assets he owned. They claimed that that Helen had obtained title to those assets by fraud, misrepresentation, or an abuse of an influential or confidential relationship. The Kimball children asserted that, under the circumstances, Helen's children and grandchild should not be permitted to hold property that had been owned by Richard. Among other things, the complaint asked that transfers of property from Richard to Helen be declared invalid and that Helen's children and grandchild

be compelled to surrender such property to the Kimball children or make compensation therefor.

*District Court Dismisses Action.*

Appellees moved to dismiss the Kimball children's complaint pursuant to Neb. Ct. R. Pldg. § 6-1112(b)(1) and (6) (codified in 2008), asserting that the Kimball children lacked standing and failed to state a claim upon which relief could be granted. At a hearing on the motion, the district court agreed to take judicial notice of a pending county court proceeding initiated by the Kimball children.

The parties submitted briefs, in which both sides represented that Richard and Helen had owned the Main House as joint tenants prior to the execution of quitclaim deeds purporting to transfer Richard's interest to Helen. In the Kimball children's brief, they also referred to the possibility that Richard's will may not have been valid and that they would have inherited property from him under intestacy statutes. They also suggested that certain securities owned by Richard may have been designated as "TOD," which we understand to mean that their ownership would have automatically transferred to the Kimball children upon Richard's death. See, e.g., *In re Trust of Rosenberg*, 273 Neb. 59, 727 N.W.2d 430 (2007).

The district court entered an order dismissing the Kimball children's complaint without prejudice. Among other things, its order stated that there was a petition raising nearly identical issues in county court and that it could not "entertain [the Kimball children's] current action until the close of the county court case."

*District Court Overrules Motion*
*to Alter or Amend.*

Within 10 days of the district court's dismissal, the Kimball children filed a motion asking the district court to reconsider it. Although styled otherwise, because the motion was filed within 10 days after the dismissal and sought substantive alteration thereof, we refer to it as a motion to alter or amend.

See *Central Neb. Pub. Power v. Jeffrey Lake Dev.*, 267 Neb. 997, 679 N.W.2d 235 (2004).

At a hearing on the motion to alter or amend, the district court took judicial notice of an order that had been entered in the county court proceeding. That county court order, entered after the district court dismissed the Kimball children's action, granted a motion to dismiss the Kimball children's petition. The county court reasoned that in the context of Helen's estate, the Kimball children were not "interested persons" under the probate code and therefore the probate code did not provide an avenue for them to obtain the relief they sought. See Neb. Rev. Stat. § 30-2209 (Reissue 2016) (defining "interested person").

At the hearing, the Kimball children argued that because the county court proceeding had been dismissed, they should be permitted to litigate their claims in district court. The Kimball children also made an oral request for leave to amend their complaint to substitute Richard's estate as a plaintiff.

Counsel for appellees offered an alternative basis for dismissal at the hearing. Counsel argued that because the Main House was owned by Richard and Helen in joint tenancy, any interest Richard held in the property would have passed to Helen and not the Kimball children, even if the property had remained in his name. Accordingly, counsel argued, even if it were assumed that the transfers of property were invalid, the Kimball children would not be entitled to the relief they sought.

Following the hearing, the district court entered an order overruling the Kimball children's motion to alter or amend. The district court did not explain its reasoning.

The Kimball children now appeal.

ASSIGNMENTS OF ERROR

On appeal, the Kimball children assign two errors. Both challenge the district court's reliance on the jurisdictional priority doctrine, but we address only one to resolve this appeal.

In that assignment, the Kimball children contend that after the county court dismissed their petition, the jurisdictional priority doctrine no longer applied, and that the district court erred by not allowing them to resume their lawsuit.

## STANDARD OF REVIEW

[1] A district court's grant of a motion to dismiss is reviewed de novo. *Brothers v. Kimball Cty. Hosp.*, 289 Neb. 879, 857 N.W.2d 789 (2015).

[2] A jurisdictional issue that does not involve a factual dispute presents a question of law, which an appellate court independently decides. *In re Estate of Hedke*, 278 Neb. 727, 775 N.W.2d 13 (2009).

## ANALYSIS

*Standing.*

[3] Before addressing the Kimball children's assignment of error, we consider appellees' argument that the action should have been dismissed under § 6-1112(b)(1) because the Kimball children lack standing. Because the requirement of standing is fundamental to a court's exercise of subject matter jurisdiction, either a litigant or a court can raise the question of standing at any time. *Hawley v. Skradski*, 304 Neb. 488, 935 N.W.2d 212 (2019).

Appellees take the position that under the Nebraska Probate Code, the Kimball children, as individuals, did not have standing to prosecute their claims. They rely on authority that generally holds that under the Nebraska Probate Code, the right and duty to sue and recover assets for an estate reside not in the devisees, but in the estate's appointed personal representative, or, if the personal representative cannot or should not act, the appointed special administrator. See *In re Estate of Hedke, supra*, citing Neb. Rev. Stat. §§ 30-2464(c), 30-2470, and 30-2476 (Reissue 2016). See, also, Neb. Rev. Stat. §§ 25-301 and 25-304 (Reissue 2016) (every action must be prosecuted in name of real party in interest, but "executor" or "administrator" may bring action without joining person for whose

benefit it is prosecuted). They argue that, under this principle, the Kimball children cannot sue to recover assets on the theory that those assets belonged to Richard and would have been distributed to them as devisees if Helen had not improperly acquired them before Richard died. We agree with appellees that under this general principle, the Kimball children would lack standing to pursue this action in their individual capacities. Under this general principle, a personal representative or special administrator of Richard's estate could seek to recover assets that were wrongfully taken from Richard, but the Kimball children, as mere devisees, could not. See *In re Estate of Hedke, supra*.

But our analysis does not end here because a specific statute confers standing on the Kimball children notwithstanding the more general rule described above. See *In re Guardianship of Patrick W.*, 316 Neb. 381, 391, 4 N.W.3d 833, 841 (2024) ("[t]o the extent there is a conflict between two statutes, the specific statute controls over the general statute"). The Kimball children founded their claims, at least in part, on the notion that transfers of Richard's assets beginning in 2013 were an abuse of Helen's power of attorney. Thus, we turn our attention to the Nebraska Uniform Power of Attorney Act (NUPOAA). Neb. Rev. Stat. § 30-4001 et seq. (Reissue 2016 & Cum. Supp. 2024). The NUPOAA generally governs acts under power of attorney that occurred on or after its effective date, January 1, 2013. See § 30-4045. See, also, *In re Estate of Adelung*, 306 Neb. 646, 947 N.W.2d 269 (2020) (NUPOAA does not apply retroactively to acts done before its effective date).

The NUPOAA provides a list of persons that "may petition a court to construe a power of attorney or review the agent's conduct and grant appropriate relief." § 30-4016(1). Included in that list is "[t]he principal's spouse, parent, or issue." § 30-4016(1)(d). The NUPOAA further provides that the county court and the district court of the principal's domicile shall have concurrent jurisdiction to determine the

validity and enforceability of a power of attorney. § 30-4006. The Kimball children are, without question, the "issue" of a principal (Richard), and in this action they petitioned the district court to review the conduct of an agent (Helen) under a power of attorney. See § 30-4002(1) and (10) (setting forth definitions of "agent" and "principal").

Because the NUPOAA conferred standing on the Kimball children to pursue the relief they were seeking, it would have been improper to dismiss the action on standing grounds. See *Griffith v. Nebraska Dept. of Corr. Servs.*, 304 Neb. 287, 934 N.W.2d 169 (2019) (explaining that in Nebraska, Legislature may provide by statute who has standing to pursue relief). Accordingly, we proceed to consider the Kimball children's assignment of error.

*Dismissal Based on Doctrine*
*of Jurisdictional Priority.*

Both parties understand the district court's initial order of dismissal to have rested on the doctrine of jurisdictional priority. Following their lead, we consider whether the district court erred in its application of that doctrine.

[4,5] Under the doctrine of jurisdictional priority, when different state courts have concurrent original jurisdiction over the same subject matter, basic principles of judicial administration require that the first court to acquire jurisdiction should retain it to the exclusion of another court. *Charleen J. v. Blake O.*, 289 Neb. 454, 855 N.W.2d 587 (2014). We have stated that while jurisdictional priority is not a matter of subject matter or personal jurisdiction, courts should enforce the jurisdictional priority doctrine to promote judicial comity and avoid the confusion and delay of justice that would result if courts issued conflicting decisions in the same controversy. See *id*.

The Kimball children argue that, after the county court dismissed the Kimball children's petition there, the doctrine of jurisdictional priority no longer supported dismissal. We

agree. The doctrine of jurisdictional priority applies when there is a case concerning the same subject matter pending in another court. See *Brinkman v. Brinkman*, 302 Neb. 315, 923 N.W.2d 380 (2019). That was no longer the case after the county court dismissed the Kimball children's petition there. And while in some cases the resolution of a parallel case in another court will have preclusive effects, see, e.g., *Trausch v. Hagemeier*, 313 Neb. 538, 985 N.W.2d 402 (2023), appellees make no argument in this appeal that the county court's dismissal of the Kimball children's petition has preclusive effects in this case.

But even if the doctrine of jurisdictional priority no longer supported dismissal after the county court dismissed the petition there, appellees argue that other reasons did. They argue that the district court was correct to dismiss the action because even if the Kimball children had standing, and even if the facts of their complaint were assumed to be true, they were not entitled to relief on the merits. Mindful of the principle that an appellate court will affirm when the record adequately demonstrates that a trial court decision is correct, even if based on a ground or reason different from that assigned by the trial court, see, e.g., *State v. Brown*, 312 Neb. 654, 980 N.W.2d 834 (2022), we proceed to consider this argument for affirmance.

*Failure to State a Claim.*

In addition to moving to dismiss based on § 6-1112(b)(1), appellees moved to dismiss based on § 6-1112(b)(6) for failure to state a claim. Consistent with that motion, they argue on appeal that even if it is assumed that the challenged transfers were invalid, the Kimball children would still have no interest in the properties at issue.

[6,7] To prevail against a motion to dismiss for failure to state a claim, a plaintiff must allege sufficient facts, accepted as true, to state a claim to relief that is plausible on its face. *Holloway v. State*, 293 Neb. 12, 875 N.W.2d 435 (2016). When

reviewing an order dismissing a complaint, an appellate court accepts as true all facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the plaintiff's conclusion. *Id.*

In this case, we agree with appellees that even if the factual allegations in the Kimball children's complaint are accepted as true, the Kimball children have not yet established a claim for relief. Each of the claims asserted in the complaint are premised on the following theory: that Helen wrongfully transferred property belonging to Richard to herself; that those transfers are invalid; and that, but for those transfers, the Kimball children would have received the transferred property pursuant to Richard's will. But, for reasons we will explain below, even if the Kimball children are correct that the transfers were wrongful and thus invalid, they would still have no interest in the properties at issue based on the facts alleged in their complaint.

The Kimball children's complaint asserted that they ought to have received personal property of Richard's under his will, including his shares of Rosedale Ranch. But the terms of the will that the Kimball children attached to their complaint devised Richard's personal property (other than the guns and firearms he devised to the National Rifle Association) to Helen. Therefore, even if Helen had wrongfully transferred Richard's personal property to herself before his death, it would not have disrupted any expectancy interest of the Kimball children, because they had none. Richard's personal property would have passed to Helen under his will even if transfers before Richard's death were invalid. Consequently, the complaint stated no claim concerning personal property upon which the Kimball children could have received relief.

Regarding real property in which the Kimball children claimed an interest, their complaint identified only the Main House. But they conceded before the district court and before this court that prior to any transfer of Richard's interest to Helen by quitclaim deed, Richard and Helen owned the Main

House in joint tenancy. See *Barry v. Barry*, 147 Neb. 1067, 26 N.W.2d 1 (1947) (noting that pleading admitted real property held in joint tenancy). If the transfer of the Main House was void and it remained in joint tenancy, the Kimball children would not have inherited any right to it under Richard's will. Instead, by operation of joint tenancy, Richard's interest in the Main House would have passed automatically to Helen. See *In re Estate of Potthoff*, 273 Neb. 828, 733 N.W.2d 860 (2007) (each tenant in joint tenancy owns whole of property and deceased tenant's interest passes to surviving tenant upon death, not by virtue of deceased's will). By its own terms, then, the complaint did not state any claim as to the Main House upon which relief could be granted.

[8] Although we agree with appellees that the complaint failed to state a claim upon which relief can be granted, as a general rule, when a court grants a motion to dismiss for failure to state a claim, a party should be given leave to amend absent undue delay, bad faith, unfair prejudice, or futility. *Eadie v. Leise Properties*, 300 Neb. 141, 912 N.W.2d 715 (2018). And while the Kimball children requested leave to amend to add Richard's estate as a party, rather than to address the shortcomings of their complaint noted above, a failure to request leave to amend only makes it more difficult to show that leave to amend should have been given. See *Chaney v. Evnen*, 307 Neb. 512, 949 N.W.2d 761 (2020). See, also, *Eadie, supra*; John P. Lenich, Nebraska Civil Procedure § 15:5 (2025).

In this case, although they did not request leave to amend to address the merits of their complaint, the Kimball children's brief in opposition to the motion did discuss ways in which property held by Richard might have passed to them but for Helen's alleged actions, beyond the theories discussed in the complaint. In the brief, as we noted above, they mentioned the possibility that Richard's will may not have been valid and that they would have inherited property from him under intestacy statutes. They also suggested that certain securities owned by Richard may have, due to a transfer on

death designation, automatically transferred to them upon Richard's death. Although the Kimball children's complaint did not mention these alternative theories, we cannot say that it would be futile to assert them. Neither can we discern any other appropriate basis for denying leave to amend. Accordingly, although the complaint failed to state a claim, we cannot affirm dismissal on that basis, because the Kimball children should have been granted leave to amend.

We therefore reverse the dismissal and remand the cause with direction to grant the Kimball children leave to amend. Nothing in this opinion should be read to preclude the Kimball children from also amending the complaint to add a representative of Richard's estate as a party. Nor should anything in this opinion be read to comment on the merits of the Kimball children's claims and appellees' defenses, beyond our conclusion above that we cannot say that amendment of the complaint would be futile.

## CONCLUSION

The Kimball children had standing to pursue relief under the NUPOAA, and the doctrine of jurisdictional priority did not support dismissal. And although the Kimball children failed to state a claim upon which relief can be granted, we find that they should be given leave to amend their complaint. Accordingly, we reverse the dismissal and remand the cause with direction to grant the Kimball children leave to amend.

REVERSED AND REMANDED WITH DIRECTION.