IN RE ESTATE OF IDA WECKER.
HUGO A. WECKER ET AL., APPELLEES, V. ANNA ZUECHER
ET AL., APPELLANTS.

FILED JULY 8, 1932. No. 28294.

*Douglas Cones* and *Leamy & Leamy*, for appellants.

*Frederick M. Deutsch* and *George D. Stevens, contra.*

Heard before GOSS, C. J., ROSE, DEAN, EBERLY, DAY and PAINE, JJ., and RYAN, District Judge.

PAINE, J.

Judgments were entered in the district court to secure an equal division to ten children of all of the personal property left in the estate of their mother. Such judgments are brought here upon the complaint that a certain portion of her estate consisted of personal property in which she held only a life estate, which portion should be distributed to six of the children who are remaindermen, and the balance of the estate should be distributed equally to all ten heirs.

Nicholas Wecker, a resident of Pierce county, died June 1, 1915, testate, at the age of 71 years, having made a will upon April 20, 1914, which was duly admitted to probate, and in which will paragraphs 3 and 4, which are material in this action, read as follows:

"3. I give, will and bequeath to my beloved wife, Ida Wecker, all of the remainder of my property, both real, personal and mixed of every kind and description of which I may die seized, for her use during her natural life, without the power to sell the real estate of said property.

"4. I give, will and bequeath all of the rest, remainder and residue of my said property, both real, personal and mixed of every name and nature, to my daughters, Anna Zuecher, Selma Grunwald, Clara Wecker, Ida Wagner, Lena Huwaldt, and my son Oscar Wecker, as tenants in common, share and share alike, reserving only the real

estate described in paragraph 2, which I give to my son, Oswald B. Wecker, and a life estate in the remainder of my property, which I give to my wife as set forth in paragraph 3."

Upon July 5, 1916, his widow, Ida, named as executrix, duly receipted for all of the personal property belonging to said estate, which amounted to $18,902.49, and was given to her for life, and upon July 7, 1916, a final decree was entered in the said estate, which formally discharged Ida Wecker as executrix, and the estate of Nicholas Wecker was closed. In addition to this personal property, she was also given possession, as life tenant under the will, of the northeast quarter of section 29, township 27, range 2, in Pierce county, and lots 1 and 2 in block 54 in the town of Pierce, upon which the home was located.

It appears that Nicholas Wecker had given comparatively large amounts of real estate to three sons, to wit, Nicholas (also called Frederick), Gustave and Hugo, and in the second paragraph of his will he gave several tracts of land, amounting in all to 320 acres, to his youngest son, Oswald. In his will he provided that his five daughters, together with his other son, Oscar, should be the remaindermen after the termination of the life estate given to his widow. These ten children, all being children of Nicholas Wecker and Ida Wecker, were the only children of the parties, and are the only parties to this lawsuit. During these years the ten children have been divided into two groups: The three oldest sons and the youngest son are the plaintiffs and appellees herein, who had each been given property by the father, and the other group of six remaindermen, consisting of the five daughters and one son, are the defendants and appellants in the case at bar.

Ida Wecker died intestate, also a resident of Pierce county, Nebraska, upon November 2, 1926, at the age of 78 years, at which time she was possessed of a life estate in the two tracts of real estate of an appraised value of

$21,350, and, in addition, was possessed of personal property of the approximate value of $28,772.39, as shown by the inventory filed December 3, 1926. Her estate was duly administered, and the time for filing claims expired October 4, 1927, upon which date the final report of her administrator was filed. Of this personal property of which she was possessed at the time of her death, several items of shares of corporation stocks, amounting in value to $1,200, were the same identical items which had been in the estate of her husband, Nicholas Wecker.

The contest is over the personal property in her estate at the time of her death. After her death the same person was appointed as administrator *de bonis non* of Nicholas Wecker's estate and appointed as administrator of her estate. The county court entered a final decree in the estate of Ida Wecker, directing that all of her estate, both real and personal property, except household furniture, should be distributed to the six remaindermen under paragraph 4 of the will.

Upon appeal to the district court, it was charged that none of the remaindermen had filed a claim against Ida Wecker's estate for the value of their alleged remainder interests, and that the time for filing claims was barred. In the district court, the remaindermen were substituted as answering defendants in the place of the administrator *de bonis non* of the estate of Nicholas Wecker and the administrator of the estate of Ida Wecker. Upon July 26, 1928, the district court for Pierce county rendered its first decree, based largely upon stipulation of the parties and the exhibits, which decree modified the decree of the county court, and provided in substance that only the personal property received by Ida Wecker from her husband's estate, of the value of $18,902.49 approximately, should be distributed to the six remaindermen, and the rest of the personal property, being in the sum of $8,847.27, should be distributed equally to all the ten children, that is, to all of her heirs at law.

A motion for new trial was filed by the four sons, appellees, but none by the remaindermen, and, upon the hearing thereon, the district court vacated its decree of July 26, 1928, and entered a new decree upon March 20, 1929, changing the value of the property to $20,831.38 in place of $18,902.49, the other provisions remaining the same. The four sons filed a motion for a new trial, but did not file a supersedeas bond in the time provided by law, and therefore, upon June 1, 1929, the administrator proceeded to distribute to each of the six remaindermen the sum of $4,085.37, making a total of $24,512.22. In the first appeal to this court, the remaindermen were the appellees, and in the case at bar they are the appellants.

Upon April 3, 1930, an opinion was filed, which appears in 119 Neb. 537, in which opinion additional facts will be found relating to this litigation. The judgment of the district court was reversed and the cause remanded for a new trial in accordance with the views expressed in the opinion. The opinion sets out that there was no evidence to show that Ida Wecker possessed any personal property in her own right at the time of her husband's death, nor was proof made that she had in no way depleted the corpus of the personal property derived from the estate of her husband. Because of the failure of the evidence on these and other points, the case was sent back for retrial in the district court. It was also stated that the matter should have been considered as arising in the estate of Ida Wecker alone. Upon going back to the district court for Pierce county, the case was tried again before the same district judge, and a new decree was entered October 31, 1931.

In this decree the district court finds that all of the personal property in possession of Ida Wecker at the date of her death, except the shares of corporate stock of the value of $1,200, was her own property, and should be distributed to all of her heirs at law; that, as the appellants herein did not supersede the former decree of this

court, a distribution was made to each remainderman on June 1, 1929, of $4,085.37, or a total of $24,512.22, and thereafter, upon January 13, 1931, a distribution was made to each of the four appellees herein of $849, or a total amount of $3,396, making a total amount distributed of $27,908.22; that from this sum there should be deducted the value of the corporate stock, of $1,200, leaving $26,708.22 net, and that the correct amount due each of the ten heirs is, therefore, $2,670.82, and 24 separate judgments were entered for repayment from each of the six remaindermen to each of the four appellees of sufficient sums so that each of the ten heirs will receive the same amount of $2,670.82, together with order for payment of costs. From this last decree, the six remaindermen have appealed.

It is contended by the appellees that the decision of the supreme court upon a previous appeal of the same case settles conclusively the points adjudicated.

The doctrine of "law of the case" has two aspects: First, as applied to proceedings in the trial court after the case has been remanded by an appellate court; and, second, as applied to proceedings in the reviewing court when the same case again appears. The law of the case is a phrase which is used to give expression to the rule that the final judgment of the highest court upon a question of law establishes the rights of the parties to that controversy, and is a final determination thereof which estops the parties afterwards from questioning its correctness, and it has been held to be binding not only on the trial court but also upon the appellate court when the case is brought again before it. This doctrine is distinct from that of *stare decisis*, for a ruling made in the same case has been held to be a final adjudication, from which the court itself cannot depart. The doctrine of this law is founded not on legislative enactment, but it is simply a rule adopted by the courts, resting upon the doctrine of *res judicata*. It has been held that, where the court reverses a judgment and orders a new trial, its opinion is

conclusive as to the principles which shall govern upon the new trial.

In examining the Nebraska decisions, we are cited to *Smith v. Neufeld,* 61 Neb. 699, in which it was held that, when a question in controversy has been once squarely decided, that decision, if not recalled, becomes the law of the case and is binding upon the parties in all subsequent stages of the litigation.

In *McBride v. Whitaker,* 5 Neb. (Unof.) 399, and in *Wells v. Cochran,* 98 Neb. 725, it was held that, when a cause was remanded to the district court, the correctness of the decision was not open to inquiry in the district court. In *Estate of Korff v. Bueker,* 75 Neb. 60, the opinion says that a reexamination of the questions discussed in the former opinion have satisfied us that the case was correctly disposed of and the law properly applied 'to the facts under consideration, clearly indicating that, while the "law of the case" rule was applied in that opinion, it was not applied until after a careful reexamination.

"It is a settled rule in this court that a legal principle involved in the trial of a case, when once determined, becomes thereafter the law of the case, binding, not only upon the trial court, but this court as well, and will not, ordinarily, be reexamined in a subsequent review of the proceedings of an inferior court had in the further trial of the action. This rule, however, is not applicable to decisions rendered on questions of fact; in such cases, the decision as to the sufficiency of testimony on a particular feature of the case, as disclosed by the record on the first trial, is not binding in a subsequent trial, where the testimony is, or may be presumed to be, materially different, in the investigation of which a reviewing court is to be controlled by the record then before it, uninfluenced by such prior decision." *Missouri P. R. Co. v. Fox,* 60 Neb. 531.

In *Nedela v. Mares Auto Co.,* 110 Neb. 108, it was held that the rule known as the law of the case is applicable

only to legal principles enunciated and rules of law laid down by the reviewing court, but has no relation to decisions upon questions of fact where the evidence at the second trial is materially different than at the first trial. *State v. Paxton*, 65 Neb. 110; *Stratton v. Bankers Life Co.*, 102 Neb. 755.

"There is some confusion in the cases as to the questions which are embraced by the doctrine of law of the case. The doctrine clearly applies to questions of law actually presented and determined upon a former appeal, as essential to its just disposition, and does not, according to many authorities, include points of law not presented and determined, either actually or impliedly, although they may be involved in the record of the appeal." 9 Bancroft, Code Practice, sec. 7464.

Let us examine the time-tried case of *City of Hastings v. Foxworthy*, 45 Neb. 676, 34 L. R. A. 321. This case had been before this court three times, and on its fourth appearance here Commissioner Irvine wrote the opinion, reviewing all of the Nebraska decisions and reviewing many other authorities, and holding that, where a case upon its first appeal is remanded generally for a new trial, and the same questions are presented on the second trial, the appellate court is not bound to follow opinions on questions of law presented on the first appeal, and may reexamine and reverse its rulings on such questions, and, with that rule announced by our Nebraska court in mind, we will examine anew the evidence and also the authorities as now presented in the briefs, together with many additional opinions found in a search on the points involved.

In the first opinion written in this court in the case at bar, 119 Neb. 537, a reversal was entered, and the one syllabus reads as follows: "The record being examined, *held* that it fails, in the particular shown in the opinion, to furnish a definite basis to support the decree and judgment of the district court. The judgment is reversed and the cause is remanded for a new trial in accordance

with the views expressed in the opinion." In the opinion a few helpful suggestions were made, and attention was called to the fact that the estates of Nicholas Wecker and Ida Wecker were coupled in the title, by having the same person appointed administrator in each estate, and it is stated that the case should be tried as if it arose in the estate of Ida Wecker alone, and that there was no evidence for the decree of the court, which found that she had in no way depleted the corpus of the personal property derived from the estate of her husband.

Under the authorities cited, this court believes that, where a case is remanded for a new trial, it is the duty of the court, upon its reappearance here, to carefully re-examine the contentions on this new appeal, while the appellees insist that this court is absolutely bound by its former decision. It is insisted by the appellants that nothing was decided in the first opinion except that the evidence then before the court was insufficient to sustain the judgment.

The next question presented for determination in the case at bar is the question whether a stipulation of facts, made in the district court at the first trial of a cause, is binding and effective at a subsequent trial of the same case.

To get the matter squarely before us, it is necessary to examine the stipulation itself, and we find upon June 1, 1928, at the first trial in the district court, this entry: "It is further stipulated that, by terms of the said last will and testament, it was the intention of the said Nicholas Wecker, deceased, to give a life estate in the residue of his property, therein referred to, to the said Ida Wecker with the power of disposition and sale of the personal property and also the right to consume such portions of the corpus thereof as might be reasonably necessary for her support and maintenance according to her standard of living and station in life."

Upon the second trial, we find this record:

By Mr. Leamy: "Let the record show that the defendants in this case are not stipulating as to what the rights of Ida Wecker were under the terms of the will of Nicholas Wecker, deceased, for the reason that the interpretation or construction of the will of said Nicholas Wecker is a question of law for the court."

By Mr. Deutsch: "There is no question but what that stipulation was made at the first trial pursuant to which an appeal was taken to the supreme court, is there?"

By Mr. Leamy: "No, none whatever."

Appellants insist that the construction of the terms of a will is a question of law for the court (40 Cyc. 1855; 2 Bancroft, Code Practice, sec. 1412; 28 R. C. L. 405, sec. 417), and that counsel may not make a binding stipulation as to a question of law (7 Bancroft, Code Practice, sec. 5857; 25 R. C. L. 1098, sec. 5). It is insisted that courts will not permit the course of justice, upon trials before them, to be stipulated or contracted in such a manner as to defeat the ends to be subserved by such trials. *Modern Woodmen of America v. Michelin,* 101 Okla. 217, 36 A. L. R. 971; 36 Cyc. 1285. A stipulation is inoperative if it be an attempt to determine the law properly applicable to the stipulated facts. *Luce v. Ash,* 28 S. Dak. 109.

Where a stipulation made on the trial of a cause appears to have been made improvidently, and to stand in the way of substantial justice, the trial court should relieve against it. *Butler v. Chamberlain,* 66 Neb. 174. And it has been held that courts may allow stipulations to be set aside. *Keens v. Robertson,* 46 Neb. 837.

It is held that the stipulation was upon the interpretation of a will, a question of law, and that the appellants are not bound by said stipulation, which they specifically rejected in the second trial of the case. A court, in the exercise of its discretion, may relieve a party from a former stipulation if it deems it is justified in so doing.

The question which appears to have given the most serious trouble in this case is the consideration of a life estate in personal property.

Originally, a gift of personal property carried the absolute interest, but there is now no question but what a life estate to one with a remainder to another in personalty may be given. 17 R. C. L. 617, sec. 3; 21 C. J. 1038.

Judge Gardner, of the United States circuit court of appeals for the eighth district, recently held that the common law did not originally admit of the creation of a life estate in personal property with a reversion or remainder over, but it is now well settled that life estates may be created in money as well as other personal property, with a remainder over to others. *Warfield v. Bixby,* 51 Fed. (2d) 210.

The distribution or delivery of property to a life tenant inures to the benefit of the remaindermen, and upon determination of the life estate the title and right of possession vest in the remaindermen, without any action on the part of the executor or administrator. *Corney v. Corney,* 257 Ill. App. 13.

In *Peck v. Smith,* 227 N. Y. 228, the testator gave his wife, Grace A. Peck, $20,000 for life. The three executors of his estate settled their account and were discharged; then later two of the executors brought suit to recover from the wife, an executrix, some bonds which she had in bad faith transferred to her sister. The plaintiffs won in the lower court, but this decision was reversed on the ground that the plaintiffs have no right to maintain the action, and are not proper parties to sue, for the $20,000 had been paid to her as a life tenant and without any reservation, and the estate closed, and therefore the former executors of her husband's estate had no further control over or right to the fund.

Improvements made to land by the life tenant will pass to the remaindermen, who cannot be required to make compensation therefor to the estate of the life tenant. *Darnell v. Williams,* 171 Ga. 651. The life tenant is entitled to everything in the nature of profits or income accruing during his tenancy in the absence of contrary restrictions. *Wagnon v. Wagnon,* 16 S. W. (2d) (Tex. Civ. App.) 366.

Increase in the value of bank stock, due to increase in the book value, passes to the heirs of the life tenant, and not to the remaindermen. *Wallace v. Wallace,* 90 S. Car. 61.

In *Skellenger v. England,* 81 Cal. App. 176, it is held that a life tenant, with the right to consume the princi-. pal for support, is not a trustee of the remaindermen. The life tenant is ordinarily entitled to appropriate only the income and profits, and cannot encroach upon the corpus of the estate unless clearly authorized to do so by will. 21 C. J. 1040, 1041.

In Pennsylvania, under a special statute, it has been held that a life tenant may use the property at his own discretion, and on his death his estate will be entitled to any profit made in the investment thereof, such life tenant not being the trustee for the remaindermen, but being their debtor in the sense that his estate will be liable only for the appraised value of the property when received by him, as was held in the case of *Letterle's Estate,* 248 Pa. St. 95, the court saying that the testator did not direct that his estate be held in trust for his wife, but gave to her the free use, possession, enjoyment, benefit, and advantage of the same during the term of her natural life, and that, therefore, she did not take this as trustee, for the property became her's for her free use, possession and enjoyment; that the money became her own, to all intents and purposes, and that she was simply a debtor to the parties ultimately at her death, whose claim is now payable out of her estate, and that such remaindermen are entitled to interest from the date of her death. *Shelley's Estate,* 287 Pa. St. 105.

It has been generally held, in decisions from many jurisdictions, that the life tenant is entitled to the profits and gains which he accumulates through the use of a life estate in personal property in the absence of the testator's contrary expression of intent. *Ruppert v. McArdle* (D. C.) Ann. Cas. 1916B, 126; *Whitehill v. Whitehill,* 211 Ia. 475; *Milner v. Brokhausen,* 153 Ia. 560.

Without extending this opinion to an undue length, we will attempt to apply the principles set out herein to the case at bar, under the evidence as now before us since the last trial in the district court.

Ida Wecker, as executrix of the estate of Nicholas Wecker, filed the receipt of herself as life tenant upon July 5, 1916, showing the receipt of the following items from his estate: Cash, $2,627.49; bank stock, $2,600; grain and lumber companies' stock, $1,200; good promissory notes, $4,500; and certificates of deposit in various banks, $7,975; making a total net sum she received as life tenant of $18,902.49. It is found that the administrator of her estate inventoried the same in 1927 at $29,981.04, and that, after deducting allowed costs and expenses of $2,072.82, there was left in her estate the net sum of $27,908.22. Only the stock in the grain and lumber companies, of the value of $1,200, remained in specie as she had received it. She had bought and sold personal property with consummate ability, selling all of the bank stock when prices were high and investing the proceeds wisely. She did not live penuriously, but lived as befitted her standing in the community. Her acts were all done in strict accord with the decree of the county court entered in her husband's estate upon March 13, 1916, which reads in part as follows: "It is further considered, ordered, adjudged and decreed by the court that all money, notes, certificates of deposit and all personal property hereinbefore set forth be and the same hereby is assigned to Ida Wecker, widow of Nicholas Wecker, deceased, with power to hold, invest, loan and change the evidences of such indebtedness from time to time as she may see fit and to possess and hold the original amounts thereof always in trust for the devisees and legatees in remainder of said estate. She, the said Ida Wecker, to have all the rents, interest, issues and profits thereof for her sole use and benefit during her life."

Acting strictly in accord with the authority given her in such decree, she had, in addition to providing living

expenses for over ten years, increased the life estate given her some $11,078.55. Her estate is clearly, under the will of her husband, indebted to the six remaindermen in the sum of $18,902.49 together with 7 per cent. interest thereon from the date of her death upon November 2, 1926, to the day of payment to them. The net balance of the funds remaining in her estate should be paid to her heirs, the ten children, share and share alike. It is directed that the costs in district court shall be paid by each heir in proportion to the amount received under this opinion. All of the judgments entered by the district court in this case are reversed, and the cause is remanded to the district court, with direction to enter a decree in accordance herewith.

REVERSED.