In re Trusteeship of the Estate of James Dean Downer.

No. 45818.

August 11, 1942.

Boardman & Cartwright, of Marshalltown, for Helen K. Rogan, executrix of the last will and testament of Cutler Downer, deceased, appellant.

G. A. Mote, of Marshalltown, for Frank C. Pope, Lilly W. Pope, Emma L. Pope and Lorette Ewing Stoughton, appellees.

C. H. Van Law, of Marshalltown, for G. W. Lawrence, trustee of the estate of James Dean Downer, deceased.

Sager, J.— The will of James Dean Downer, so far as needs be noticed here, provides:

"Fifth. The remainder of my estate I will, devise and bequeath to my son George Cutler Downer and my old and trusted friend John Brennecke of Marshalltown, Marshall County, Iowa, as Trustee for the purposes hereinafter stated. I

direct that said trustees shall handle my property during the natural life of my said son George Cutler Downer the same as I would if living and pay to my said son the income of all my said property (less the expense of said trustee in handling same), said income to be paid from time to time as my son may desire the same. At the death of my said son George, if he should leave a child or children begotten by his body surviving him, I will and devise that one-half (½) the property in the hands of my said trustee shall be paid to the child or children of the said George Cutler Downer aforesaid, share and share alike. The other half (½) of my property remaining in the hands of my said trustee to be divided equally between my niece Mary E. Ewing of Chicago, Illinois, and my niece Mrs. Ellen J. Pope of Newton Center, Massachusetts, or their heirs, to have and to hold forever.''

The son died without heirs and appellees are the persons entitled to the fund, unless, by proper construction of the terms of the will and applicable rules of law, the income had become a part of the son's estate.

The cestui que trust died in May 1940, and appellant is executrix of his will. On September 7, 1940, the then acting trustee filed a final report wherein he stated his purpose to pay the net income of the fund to the residuary legatees. Objections filed by appellant raised the question now before us. As stated, the trial court found against the estate of the deceased son. Herein we think the court was in error.

The primary rule of construction of wills is thus succinctly stated in an annotation to First National Bank & Trust Co. v. Baker, 124 Conn. 577, 1 A. 2d 283, 118 A. L. R. 339, at page 352:

''It is axiomatic that, in the construction of wills and the determination of the respective rights of legatees and devisees thereunder, the testator's intent is the all-important consideration.''

There would seem to be no escape from the conclusion that the testator intended his son to have the income when he used this language:

''I direct that said trustees shall handle my property during the natural life of my said son George Cutler Downer * * *

and pay to my said son the income of all my said property * * * said income to be paid from time to time as my son may desire the same.''

Appellees argue that the clause ''as my son may desire the same'' makes the bequest conditional. We do not so construe it. A fair construction would seem to be that the desire or request could only fix the time when the trustees were compelled to pay what already belonged to the cestui que trust. Appellees cite Ober v. Seegmiller, 180 Iowa 462, 160 N. W. 21; Darling v. Dodge, 200 Iowa 1303, 206 N. W. 266; and Ober v. Dodge, 210 Iowa 643, 231 N. W. 444. While there will be found in these cases some language which seems to support appellees' contention, the question now before us was not there involved. These cases deal only with the attempt of creditors to reach income intended for the sole benefit of the cestui que trust. We there sustained the trusts.

But if the income became the property of the cestui que trust only as he expressed the desire that it be paid to him, the record establishes that the son had plainly indicated that he wished to receive the money. For reasons best known to the various trustees, they refused to let him have it.

The creator of the trust died July 2, 1912. The trustees named in the will declined to qualify, and on November 13, 1914, the First Trust and Savings Bank of Marshalltown qualified as trustee. The charter of the said bank having expired, the First National Bank of Marshalltown was substituted on the 4th day of August 1919, to be displaced on November 10, 1928, by T. J. Shoemaker, who, in turn, was succeeded on November 4, 1933, by G. W. Lawrence, presently acting trustee.

On June 3, 1920, nearly eight years after his father's death, the son wrote from Indianapolis, Indiana, to St. Clair, president of the First National Bank, as follows:

''Dear Sir: This is to let you know I am still alive, and you may inform Mr. Shoemaker of same, and I have heard all the stories he has told and a couple of others about me, but it has not hurt me any. I am coming to your city and you cannot offer any excuse that there is nothing coming to me from the estate which I know there is and about how much.''

On October 9, 1924, the son wrote to St. Clair as follows:

"I am writing to find out if there is anything coming to me from the estate, and if there is, would you be willing to send it to me whenever I should ask you to. * * * I am enclosing you a stamped envelope where to write."

To this letter the son received this rather sardonic reply:

" * * * There is still no income from the estate whereby under its terms would be payable to you. This is particularly true due to the expenses incurred * * * Glad to hear from you and to know things are going along with you reasonably well. It is my hope that you may continue in your usual good health, spirits and prosperity."

This was 12 years after the father died.

On February 28, 1929, nearly 17 years after the father's death, the son wrote this to Shoemaker:

"I am writing you a line to find out who is looking after the estate and the condition it is in. * * * I received a letter from Mr. Sinclair about three years ago, while I was down in lower Old Mexico, mailed to me at Houston, Texas, and he said in the letter that the party who bought the farm had pretty hard luck and was slow in paying the interest and principal, and it would not surprise him at any time in getting the farm back again, and by the tone of his letter I would never be able to get a 5c piece from income from estate for several years to come, if I ever did. I have given up all hopes of ever getting anything. * * * I am enclosing you a stamped envelope. Any news you can give will be appreciated."

More than 19 years after the death of the father, on October 19, 1931, the son again wrote from Evansville, Indiana, this:

"I am writing you a line to find out when you can get an order of the Court so I can get that money. If I have to come, I will come out, but I do not want to unless I have to. * * * I enclose you stamped envelope where to write and they will forward it to me."

To this Shoemaker replied under date of October 23, 1931:

"The Court will not make order for the payment of any amount to you according to the Will. He says it is a trust fund and cannot be paid until your death."

On May 7, 1940, nearly 28 years after the death of the father, Shoemaker referred the son to Lawrence, then acting trustee, as follows:

"You write him and he can give you the information you desire."

Twenty-two days later the son died. Whether in the intervening period he had strength to write again does not appear. He died testate, with his fears that he would not get a "5c piece" apparently justified. No argument would seem to be required to support our conclusion that this income is the property of the estate of the son. We have refrained from analyzing the citations appearing in the briefs because they do no more than state general principles.

The cause is reversed and remanded for orders in conformity herewith.—Reversed and remanded.

All JUSTICES concur.