IN RE TRUST CREATED BY HENRY S. HANSEN, DECEASED.
WELLS FARGO BANK, N.A., TRUSTEE OF THE HENRY S.
HANSEN TRUST, ET AL., APPELLEES, V. ESTATE OF
RUTH ELAINE MANSFIELD, APPELLANT.
739 N.W.2d 170

Filed August 31, 2007. No. S-06-002.

Michael D. McClellan and William E. Gast, of Gast & McClellan, for appellant.

M.H. Weinberg, of Weinberg & Weinberg, P.C., for appellees Stephen S. Scholder and Paula Sue Baird Kaminski.

William R. Johnson, of Lamson, Dugan & Murray, L.L.P., and Raymond E. Walden, of Walden Law Office, for appellee Wells Fargo Bank, N.A.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MCCORMACK, JJ.

HEAVICAN, C.J.

## NATURE OF CASE

The county court determined, without an evidentiary hearing, that after the beneficiary of a discretionary support trust had died, the trustee could not pay claims for the beneficiary's health care expenses because the purpose of the trust had ceased to exist. We conclude that a decedent beneficiary's estate can seek to enforce the beneficiary's interests in a trust to the same extent that the beneficiary could have enforced his or her interests immediately before death. We further conclude that an evidentiary hearing was required before the county court could

determine whether the trustee abused its discretion or had a duty to make support payments. Accordingly, we reverse and vacate the county court's order and remand the cause with directions to hold an evidentiary hearing.

## BACKGROUND

### TRUST PROVISIONS

In June 1979, Henry S. Hansen executed this inter vivos trust. The trust provided for the care, support, and maintenance of Hansen during his lifetime. Upon Hansen's death, the residue of his estate was to be held in trust for the lifetime benefit of his daughters. Article I provided: "The Trust shall continue for the duration of the lives of Grantor's two daughters, MILDRED B. BONACCI and RUTH E. MANSFIELD, and until the death of the survivor of them." Article II provided in part:

The Trustee shall make two divisions of the corpus of the Trust, one for MILDRED B. BONACCI and one for RUTH E. MANSFIELD. During the lifetime of each of said daughters, the Trustee shall pay the net income of the respective divisions of the Trust to said daughters in install-ments not less frequently than quarterly. In addition, should either of said daughters, by reason of accident or illness require funds in excess of the net income of the Trust, then the Trustee shall make such payments from such daughter's division of the principal as it may deem proper for the bene-fit of such daughter.

Upon the surviving daughter's death, article III instructed the trustee to pay Hansen's four grandchildren $5,000 each and to distribute the remaining funds to two of those grandchildren, Paula Sue Baird Kaminski and Stephen S. Scholder.

### REMAINDER BENEFICIARIES' FILING AFTER RUTH'S DEATH

Hansen died in October 1979. In May 2005, the trustee, Wells Fargo Bank, N.A., registered Hansen's trust with the county court, with notice to interested parties. On June 6, 2005, the remainder beneficiaries, Kaminski and Scholder, filed an action to declare rights with the county court, alleging that Mildred B. Bonacci had died on June 30, 1986, and that Ruth Elaine Mansfield (Ruth) had died on January 8, 2005. They alleged that

on January 19, a person named "Jane Falion" had filed a claim with the trustee requesting payment for Ruth's medical expenses and that the trustee had denied the claim on March 10. The record does not reflect whether Falion is Ruth's personal representative. Two letters, one from Falion and another from the trustee, were attached as exhibits, along with invoices for Ruth's expenses. In the trustee's letter, a trust officer stated that the trustee did not believe it could make a distribution after Ruth's death and that "it is our understanding that [Ruth's] Estate has sufficient assets to pay those expenses."

## TRUSTEE SEEKS COURT DIRECTIVE

On June 7, 2005, the trustee filed a petition for a trust administration proceeding. The same letters were attached as exhibits. The trustee alleged that it had denied the claim "until such time as [it] obtained credible information regarding the composition of [Ruth's] probate estate" and that the estate had failed to provide this information upon request. The trustee requested that the court interpret the trust and direct how it should distribute the assets.

## RUTH'S ESTATE SUES TRUSTEE

In August, Ruth's estate filed an action for breach of the trust and to compel the trustee to comply with its duties. Ruth's estate alleged that beginning in 2001, Ruth's physical and mental health had deteriorated and that her relatives and representatives "inquired to the Trustee about the terms of the Trust and, in particular, the sections of the Trust [dealing with payments to the beneficiaries for illness and distribution of the estate]." It alleged that the trustee knew or should have known of Ruth's medical condition and needs, but did not exercise any diligence in inquiring about her support or distribute any funds for her support. The estate did not allege that anyone on Ruth's behalf asked the trustee for support payments before Ruth's death.

The court set an evidentiary hearing on the estate's action against the trustee for August 23, 2005. Before the hearing, Ruth's estate deposed the trust officer who had written the trustee's letter, and the remainder beneficiaries served additional discovery on the trustee. On August 11, the trustee moved to

consolidate the actions and continue the evidentiary hearing. The court also set a hearing on those motions for August 23, to be conducted before the evidentiary hearing.

## REMAINDER BENEFICIARIES SEEK COURT DIRECTIVE

In addition to their original action to declare rights, on August 15, 2005, the remainder beneficiaries also moved for a declaration of rights. In their motion, they asked the county court to decide three issues as a matter of law in order to guide the parties in resolving their dispute. The remainder beneficiaries asked, restated: (1) Does the court or trustee determine the propriety of distributions under the trust? (2) Can the trustee deny payments for billings related to Ruth's care, accrued before her death but not submitted until after her death? (3) If billings submitted after Ruth's death may be paid, what standards should the trustee use in determining whether to pay the expenses? The remainder beneficiaries further stated: "The factual development of the case can still proceed to an ultimate determination of rights based upon the Court's legal guidance . . . ."

## COUNTY COURT HEARINGS

On August 23, 2005, just before the hearing on the trustee's motions to continue and to consolidate the actions, the county court judge had a conversation with counsel for the remainder beneficiaries. Counsel stated that the trustee and the remainder beneficiaries would argue that the judge's powers "were done" after Ruth's death and that the evidentiary hearing may not be necessary. During the hearing, the court stated that it could not conduct the evidentiary hearing because another case was taking up the afternoon.

Counsel for the remainder beneficiaries stated that the remainder beneficiaries and the trustee were asking for a ruling on whether postdeath payments could be made if there were no bills submitted before Ruth's death and that if the court concluded the trust was unambiguous, it could decide that issue as a matter of law. They argued that if the court concluded the payments could be made, then Ruth's estate could submit evidence.

Ruth's estate agreed with the remainder beneficiaries that the threshold issue was whether the trustee could make the

payments, but argued that there was evidence the court must hear before making that determination. In addition, Ruth's estate argued that there would be evidence that the trustee was aware of Ruth's circumstances before her death and that there was a request for support payments prior to her death. The court stated it would not make a determination or receive evidence that day and continued the hearing.

Various discovery actions and motions to compel Ruth's estate to produce documents were filed during the fall of 2005. In November, the court sustained the remainder beneficiaries' motion to compel discovery and gave Ruth's estate 60 days to respond. On December 23, however, the court issued a written order, concluding that an evidentiary hearing was unnecessary and deciding the dispute.

### County Court's Order

The county court specifically found:

> Ruth . . . was [a] successful business woman and had substantial income at her disposal, exclusive of the Trust income. As she advanced in age, Ruth . . . became ill and infirm. Medical bills and last illness expenses were incurred. On January 8, 2005, Ruth . . . died. Thereafter, on January 19, 2005, for the first time, representatives of Ruth['s] estate made a written request to the Trustee for payment of these expenses from the Trust funds.

The court determined that the Hansen trust was a discretionary support trust because the support payments did not become mandatory until "the Trustee in [its] discretion determines that the beneficiary requires funds in excess of the Trust income." The court ultimately concluded that the trustee had properly denied payment of the medical bills because the purpose of the trust had ended with Ruth's death and the payments would only benefit Ruth's creditors and heirs.

Ruth's estate timely appealed.

### ASSIGNMENTS OF ERROR

Ruth's estate assigns that the county court erred in (1) rendering a factual and legal decision without the benefit of an evidentiary hearing, (2) determining that Ruth's interests in the

trust ended with her death, (3) misapplying the law applicable to determining the purposes of a trust, (4) finding that the trustee had satisfied its duties under the trust, and (5) entertaining communications with counsel for the remainder beneficiaries outside the presence of the other parties.

## STANDARD OF REVIEW

Appeals involving the administration of a trust are equity matters and are reviewable in an appellate court de novo on the record.[1] In the absence of an equity question, an appellate court, reviewing probate matters, examines for error appearing on the record made in the county court.[2] When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[3] In instances when an appellate court is required to review cases for error appearing on the record, questions of law are nonetheless reviewed de novo on the record.[4]

## ANALYSIS

Ruth's estate contends the county court could not determine the terms of the trust or whether the trustee had complied with its duties under the trust without first conducting an evidentiary hearing. The remainder beneficiaries argue the court could decide this issue as a matter of law because a trustee has no discretion to make support payments after a beneficiary's death. They also characterize the court's order as a default judgment and their August 15, 2005, motion to declare rights as a motion for a judgment on the pleadings.

### NATURE OF REMAINDER BENEFICIARIES' MOTION

Neb. Ct. R. of Pldg. in Civ. Actions 12(c) (rev. 2003) provides in part: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment

---

[1] *In re Trust of Rosenberg*, 273 Neb. 59, 727 N.W.2d 430 (2007).

[2] *Id.*

[3] *Id.*

[4] *Id.*

on the pleadings." The remainder beneficiaries' August 15, 2005, filing is entitled "Motion of Remaindermen for a Declaration of Rights and Notice," not a request for a judgment on the pleadings. Moreover, a motion for judgment on the pleadings is properly granted when it appears from the pleadings that only questions of law are presented.[5]

The remainder beneficiaries admitted in their motion that there were issues of fact to be resolved but stated that "[t]he factual development of the case can still proceed to an ultimate determination of rights based upon the Court's legal guidance in an expeditious manner." Thus, their characterization of the motion as a request for a judgment on the pleadings is without merit.

Neither was the August 15, 2005, motion a request for a default judgment. The remainder beneficiaries did not allege that Ruth's estate had failed to file an answer, nor did they ask the court to determine that the trustee could not pay the billings for Ruth's care because of her estate's alleged default. Rather, they ask the county court to decide *whether* the trustee could pay the billings and, if so, what standards should be applied.

Moreover, we reject the remainder beneficiaries' argument that Ruth's estate "failed to answer [or] vacate the default judgment between August 23, 2005 and the date of the Order of December 22, 2005."[6] No judgment in this case was entered before December 23, 2005, and the county court had authority to combine the various requests for relief into one proceeding,[7] which consolidation the trustee specifically requested. Their motion is more properly characterized as seeking the court's direction in a matter of trust administration.

 The act of registering a trust gives the county court jurisdiction over the interests of all notified beneficiaries to decide issues related to any matter involving the trust's administration, including a request for instructions or an action to

---

[5] *Johnson v. State*, 270 Neb. 316, 700 N.W.2d 620 (2005).

[6] Brief for appellees Kaminski and Scholder at 24.

[7] See Neb. Rev. Stat. § 30-3814(d) (Cum. Supp. 2006).

declare rights.[8] In exercising probate jurisdiction, a court may use equity power and principles to dispose of a matter within the court's probate jurisdiction.[9]

■ Section 30-3812 does not limit to trustees the right to seek instructions from the court.[10] Further, Nebraska's declaratory judgment statutes allow trustees and persons interested in the administration of a trust to seek a declaration regarding any question arising in the administration of a trust.[11] Thus, without deciding the propriety of the remainder beneficiaries' motion under these circumstances, we construe their motion as a request for the court to instruct the trustee on its duties and powers.

This reading of § 30-3812 is consistent with a proposed rule for the Restatement (Third) of Trusts. As of the date of this opinion, the American Law Institute has tentatively approved the 2005 draft of the Restatement (Third) of Trusts § 71 at 9 (Tent. Draft No. 4, 2005), which provides: "A trustee or beneficiary may apply to an appropriate court for instructions regarding the administration or distribution of the trust if there is reasonable doubt about the powers or duties of the trusteeship or about the proper interpretation of the trust provisions."[12] Because a "beneficiary" includes persons with "a present or future beneficial interest in a trust, vested or contingent,"[13] the proposed Restatement rule also allows remainder beneficiaries to request the court to instruct a trustee on its powers and duties.

---

[8] See Neb. Rev. Stat. §§ 30-3812 and 30-3819 (Cum. Supp. 2006).

[9] *In re Estate of Stephenson*, 243 Neb. 890, 503 N.W.2d 540 (1993). See, also, Neb. Rev. Stat. § 30-3806 (Cum. Supp. 2006).

[10] See *In re Trust of Rosenberg*, 269 Neb. 310, 693 N.W.2d 500 (2005).

[11] Neb. Rev. Stat. § 25-21,152 (Reissue 1995).

[12] See, also, American Law Institute, 82d Annual Meeting: 2005 Proceedings 313 (2005) (tentatively approving draft); George Gleason Bogert & George Taylor Bogert, The Law of Trusts and Trustees § 559 (rev. 2d ed. 1980).

[13] Neb. Rev. Stat. § 30-3803(3)(A) (Cum. Supp. 2006). See, also, Restatement (Third) of Trusts § 48, comment *a*. (2003).

## Type of Trust Hansen Created

Ruth's estate argues that a trustee's liability for abusing its discretion during a beneficiary's lifetime is not extinguished by the beneficiary's death and that the county court could not make that determination without an evidentiary hearing. The remainder beneficiaries argue that "[u]nder a discretionary support trust, after a life beneficiary's death, the trustee cannot distribute assets to or for the beneficiary because the purpose of the trust related to the life beneficiary has ceased."[14]

Under our de novo on the record review, we determine that the threshold issue presented by these arguments is what type of trust the settlor created. The extent of the beneficiary's interest in a trust depends upon the discretionary power that the settlor intended to grant the trustee.[15] When the parties do not claim that the terms are unclear or contrary to the settlor's actual intent, the interpretation of a trust's terms is a question of law.[16] The parties do not claim that the terms of the trust are unclear or fail to accurately reflect Hansen's intent. Thus, the type of trust he created is a question of law, and we conclude that the county court and both parties are laboring under an incorrect assumption that Hansen created a discretionary support trust, or hybrid trust.

We begin with the distinction between a support trust and discretionary trust, which we recently clarified in *Pohlmann v. Nebraska Dept. of Health & Human Servs.*[17]:

"The settlor's intent determines whether a trust is classified as a support or a discretionary trust . . . . A support trust essentially provides the trustee 'shall pay or apply only so

---

[14] Brief for appellees Kaminski and Scholder at 29.

[15] See, Restatement (Third) of Trusts, *supra* note 13, § 50(2); Restatement (Second) of Trusts § 128 (1959).

[16] See, § 30-3803(19); *In re Trust of Rosenberg, supra* note 1; *Smith v. Smith,* 246 Neb. 193, 517 N.W.2d 394 (1994). See, also, Neb. Rev. Stat. § 30-3841 (Cum. Supp. 2006).

[17] *Pohlmann v. Nebraska Dept. of Health & Human Servs.,* 271 Neb. 272, 280, 710 N.W.2d 639, 645 (2006), quoting *Eckes v. Richland Cty. Soc. Ser.,* 621 N.W.2d 851 (N.D. 2001). See, also, Restatement (Second) of Trusts, *supra* note 15, comments *d.* and *e.*

much of the income and principal or either as is necessary for the education or support of a beneficiary.' . . . A support trust allows a beneficiary to compel distributions of income, principal, or both, for expenses necessary for the beneficiary's support . . . .

"Conversely, a discretionary trust grants the trustee 'uncontrolled discretion over payment to the beneficiary' and may reference the 'general welfare' of the beneficiary. . . . [T]he beneficiary of a discretionary trust does not have the ability to compel distributions from the trust . . . ."

We further stated in *Pohlmann* that trust provisions granting trustees the power to pay trust assets to a beneficiary " '*as it may, from time to time, deem appropriate for* [*the beneficiary's*] *health, education, support or maintenance*' . . . do not create a right of the beneficiary to compel payments from the trust."[18]

Hansen, however, did not grant the trustee the same breadth of discretion created by the trust in *Pohlmann*. That is, Hansen did not provide that the trustee " '*may*, from time to time,' " make determinations of his daughter's needs; rather, he provided that " 'the Trustee *"shall"*' " make payments for his daughter's benefit if she should require funds in excess of the trust's income because of an accident or illness.

This provision is the functional equivalent of a term providing that " 'the trustee *"shall* pay or apply only so much of the . . . principal . . . as is necessary for the [medical care] . . . of a beneficiary." ' "[19] The trustee had discretion to determine whether and how much additional support Ruth properly required as the result of an accident or illness, but it did not have discretion to determine whether to support her.[20] In general, trustees of support trusts have discretion to determine what is needed for the beneficiary's support and to make payments only for

---

[18] *Pohlmann, supra* note 17, 271 Neb. at 280, 710 N.W.2d at 645 (emphasis in original), citing *Doksansky v. Norwest Bank Neb.*, 260 Neb. 100, 615 N.W.2d 104 (2000), and *Smith, supra* note 16.

[19] *Pohlmann, supra* note 17, 271 Neb. at 280, 710 N.W.2d at 645 (emphasis supplied).

[20] See, generally, *First Nat'l Bk. of Maryland v. Dep't of Health*, 284 Md. 720, 399 A.2d 891 (1979).

that purpose.[21] But this level of discretion does not preclude a beneficiary from seeking to show that a trustee has abused its discretion in failing to make support payments.[22]

The language of Hansen's trust indicates that his primary concern was the care of his daughters in the event of an accident or illness. We conclude that Hansen authorized the trustee to exercise the same degree of discretion created by an ordinary support trust but limited Ruth's interests in the trust's principal to the support she needed upon the happening of a designated event.[23] Having established which type of trust Hansen intended to create, we turn to the county court's determination regarding the trustee's postdeath obligations.

### RIGHT OF RUTH'S ESTATE TO RECOVER SUPPORT PAYMENTS

Part of the county court's order shows it determined, as a matter of law, that a trustee cannot make payments for the beneficiary's last-illness expenses after the beneficiary's death, regardless of whether the medical bills were submitted to the trustee before or after the beneficiary's death. Relying on *Smith*,[24] the court concluded:

> [T]he purposes of the Hansen Trust (support of the beneficiary during her life) ended with the death of Ruth . . . . Payment of the medical bills and last illness expenses would benefit the creditors and heirs of the estate of Ruth . . . instead of Ruth . . . .
>
> It is clear that the Trustee acted properly, and in good faith, in denying payment of said expenses from the Trust funds.

If the county court had correctly determined that a beneficiary's estate could never recover expenses for the beneficiary's last illness after the beneficiary has died, then its further determination that the trustee had not abused its discretion in denying

---

[21] See Bogert & Bogert, *supra* note 12, § 811.

[22] See *First Nat'l Bk. of Maryland, supra* note 20.

[23] See Restatement (Third) of Trusts, *supra* note 13, § 49, comment *f.*, and § 50, comment *d(4)*. Compare *Pyne v. Payne*, 152 Neb. 242, 40 N.W.2d 682 (1950).

[24] *Smith, supra* note 16.

such claims would necessarily follow, even without an evidentiary hearing. We conclude, however, that the county court interpreted our decision in *Smith* too broadly.

In *Smith*, this court stated that "support trusts may be reached by creditors for support-related debts, but that discretionary trusts may not be reached by creditors for any reason."[25] We held that the beneficiary's former wife could not reach two discretionary support trusts when the purpose of the trusts had ceased to exist. The trusts were intended to benefit the settlors' son and his children, in the event their parents were unable to do so. The son owed more than $90,000 in child support arrears, and his ex-wife filed two separate actions to garnish the trust assets for the debt, which actions were consolidated on appeal. In the first action, this court held that the trust assets could not be reached for child support arrears after the children were emancipated:

> [T]he payment of the child support arrearage would not further the purposes of the trusts, since the children are emancipated. Without a showing that the payment of the arrearage would contribute to the support of the beneficiaries of the trusts, [the trustee] could not be compelled to distribute trust assets.[26]

*Smith* is distinguishable, however, because the person attempting to reach the trust was the beneficiary's creditor. In the first action, she did not show that her claim against the son was support-related or would support his children if the parents were unable, because the children were emancipated. Nor were we dealing with a beneficiary's request for support payments in that action. In contrast to creditors, a personal representative has the same right to enforce a decedent's rights and claims that the decedent had immediately prior to death, where the cause of action survives death.[27]

The county court's reasoning that the payment of medical expenses would benefit Ruth's heirs instead of Ruth would also

---

[25] *Id.* at 197, 517 N.W.2d at 398.

[26] *Id.* at 199, 517 N.W.2d at 399.

[27] See Neb. Rev. Stat. § 30-2464 (Cum. Supp. 2006).

apply if the trustee had failed to make quarterly payments to Ruth from her half of the trust's accrued income. But the general common-law rule is that a beneficiary's estate may recover income of the trust, which is accrued and payable at the time of the beneficiary's death but has not been paid over,[28] unless the trustee had uncontrolled discretion whether to make distributions of income.[29] We agree and note that this rule is consistent with our holding that the estate of a life tenant is entitled to profits accumulated through the life tenant's use of personalty in the life estate, in the absence of the testator's expressed contrary intent.[30]

Accordingly, we conclude that *Smith* does not control here and that Ruth's estate can seek to enforce Ruth's interests in the trust to the extent that Ruth could have enforced her interests immediately before her death. We adopt the standard for an estate's recovery of the beneficiary's last-illness expenses from the Restatement (Third) of Trusts § 50 (2003), which concerns the enforcement of a beneficiary's interests and specifically deals with postdeath obligations.

When a beneficiary dies before payment for necessary services are rendered, the Restatement provides:

> A question may arise, following the death of the beneficiary of a discretionary interest, whether a support or other standard authorizes or requires the trustee to pay the beneficiary's funeral and last-illness expenses and debts incurred by the beneficiary for support. Ultimately, the question is one of interpretation when the terms of the trust are unclear, with the presumption being that the trustee has discretion to pay these debts and expenses.

---

[28] See, e.g., *In re Trusteeship of Downer*, 232 Iowa 152, 5 N.W.2d 147 (1942); *Leverett v. Barnwell*, 214 Mass. 105, 101 N.E. 75 (1913); *Matter of Will of Hopkin*, 119 Misc. 2d 218, 462 N.Y.S.2d 587 (1983); Restatement (Second) of Trusts, *supra* note 15, § 235A; Annot., 141 A.L.R. 1466 (1942).

[29] *Green v. Gilmore*, 331 Mass. 283, 118 N.E.2d 755 (1954); *Minot v. Tappan*, 127 Mass. 333 (1879).

[30] See *In re Estate of Wecker*, 123 Neb. 504, 243 N.W. 642 (1932). See, also, Uniform Principal and Income Act, specifically Neb. Rev. Stat. § 30-3126(b) (Cum. Supp. 2006).

A duty to do so is presumed only to the extent that (i) probate estate, revocable trust, and other assets available for these purposes are insufficient or (ii) the trustee, during the beneficiary's lifetime, either agreed to make payment or unreasonably delayed in responding to a claim by the beneficiary for which the terms of the trust would have required payment while the beneficiary was alive. (A deceased beneficiary's estate may also recover distributions the trustee had a duty to make but did not make during the beneficiary's lifetime.)[31]

Obviously, recovery under these factors presents factual issues as to whether the trustee abused its discretion or had a duty to make support payments, and the parties have not yet been given an opportunity to try these issues in an evidentiary hearing. In its order, the county court found that no claims for medical expenses were submitted to the trustee prior to Ruth's death. This finding, however, was contrary to statements made by counsel for Ruth's estate that it would show a request for support payments was made before Ruth's death. The court also found that Ruth was a businesswoman with "substantial income at her disposal," although no evidence in the record supports that finding.

This court has very recently either reversed or vacated three separate county court orders for lack of competent evidence when the court failed to hold an evidentiary hearing on factual issues.[32] Neither the parties' arguments nor the court's discussions with the parties can substitute for providing the parties an opportunity to support or refute disputed factual issues raised by the pleadings.[33] Our adoption of the Restatement's postdeath obligation standard requires us to once again vacate

---

[31] Restatement (Third) of Trusts, *supra* note 13, § 50, comment *d(5)*. at 269. See, also, II Austin Wakeman Scott & William Franklin Fratcher, The Law of Trusts § 128.4 (4th ed. 1987).

[32] *In re Estate of Baer*, 273 Neb. 969, 735 N.W.2d 394 (2007); *In re Trust of Rosenberg, supra* note 10; *In re Guardianship & Conservatorship of Trobough*, 267 Neb. 661, 676 N.W.2d 364 (2004).

[33] See, *In re Trust of Rosenberg, supra* note 10; *In re Guardianship & Conservatorship of Trobough, supra* note 32.

the county court's order to hold an evidentiary hearing on the relevant factual issues.

An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[34] In light of our conclusion that the county court must conduct an evidentiary hearing to determine whether the trustee abused its discretion or had a duty to make support payments, it is unnecessary for us to reach the remaining assignments of error.

## CONCLUSION

We conclude that the county court erred in determining, as a matter of law, that the trustee of a support trust cannot make payments for the beneficiary's last-illness expenses after the beneficiary's death without conducting an evidentiary hearing on factual issues relevant to that determination. We therefore reverse and vacate the court's order and remand the cause to the county court with directions to hold an evidentiary hearing on the issues outlined in this opinion.

REVERSED AND VACATED, AND CAUSE
REMANDED WITH DIRECTIONS.

MILLER-LERMAN, J., not participating.

---

[34] *State v. Morrow*, 273 Neb. 592, 731 N.W.2d 558 (2007).