IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

JAMES-ESTENSON V. ESTENSON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

KARA D. JAMES-ESTENSON, APPELLEE AND CROSS-APPELLANT,

V.

NATHAN E. ESTENSON, APPELLANT AND CROSS-APPELLEE.

Filed November 21, 2017.    No. A-16-846.

Appeal from the District Court for Lancaster County: ANDREW R. JACOBSEN, Judge. Affirmed.

Matt Catlett, of Law Office of Matt Catlett, for appellant.

Andrea D. Snowden and Amanda M. Phillips, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellee.

PIRTLE, RIEDMANN, and ARTERBURN, Judges.

ARTERBURN, Judge.

I. INTRODUCTION

Nathan E. Estenson appeals and Kara D. James-Estenson cross-appeals from an order entered by the district court for Lancaster County which modified the parties' decree of dissolution. Nathan assigns numerous jurisdictional, procedural, and factual errors regarding the district court's modification of the decree. Kara argues the district court erred by refusing to award an upward deviation for Nathan's failure to pay noncovered medical expenses for the parties' only child. For the reasons set forth below, we affirm.

## II. BACKGROUND

The parties were divorced pursuant to an agreed upon decree of dissolution entered by the district court on April 11, 2011. The parties have one child, Ronan, born in 2004. The parties were awarded joint legal custody of the child with primary physical custody awarded to Kara and specific parenting time awarded to Nathan. The decree ordered Nathan to pay $156.00 per month in child support. The decree further awarded Nathan $500.00 per month in alimony for the first 18 months following the decree and $300.00 per month for the following 6 months thereafter. The decree did not order Nathan to pay any amount towards work-related childcare expenses as Nathan held out that he was unemployed at the time of the agreement and entry of the decree. The decree ordered Kara to pay the first $480.00 of medical and dental expenses for the minor child each calendar year with the remainder to be divided equally thereafter. The decree required Kara to provide Nathan with copies of all medical or dental bills along with evidence as to what had been paid by insurance, at least twice per year.

On June 16, 2011, Kara filed a complaint to modify the decree, requesting an increase of Nathan's child support, as well as an increase in Nathan's obligation for work-related daycare expenses. On January 5, 2012, the district court ordered that Nathan's child support be increased to $616.00 per month. The order remained silent as to Kara's requested increase in work-related daycare expenses.

On July 18, 2012, Kara filed another complaint to modify the decree. Kara requested that her alimony obligation to Nathan be terminated, Nathan be ordered to pay his share of Ronan's medical and dental expenses, and Nathan be ordered to pay for a portion of the work-related childcare expenses. A summons was filed with the complaint and was returned without service on August 29, 2012. Kara filed a second summons that day, which was returned October 9, 2012, without return of service. On October 23, 2012, Kara filed an amended complaint to modify requesting her spousal support obligation be terminated, establishing Nathan's obligation for work-related childcare expenses, increasing Nathan's obligation for medical and dental expenses, and awarding Kara for unreimbursed medical and dental expenses already incurred. Service of the amended complaint was perfected on November 20, 2012, Nathan signed the receipt of service.

Kara filed a second amended complaint for modification on August 2, 2013. On September 2, 2013, Nathan filed an answer and counterclaim in response to Kara's second amended complaint. Nathan requested that his child support obligation be reduced or eliminated. On October 2, 2013, Kara filed an answer to Nathan's counterclaim. In addition, Nathan filed a "motion to cite Plaintiff in contempt" requesting the district court to hold Kara in contempt due to her alleged willful failure to pay her spousal support obligation, as well as her failure to provide the proper documentation to Nathan for Ronan's medical and dental expenses.

Trial was set for the matter on December 18, 2014. Both parties filed multiple pretrial motions, as well as motions to continue trial. We will address the rulings of the district court with regard to the error assigned on these motions more thoroughly in the analysis of this opinion. Trial on all matters pending commenced on June 29, 2015, and concluded on August 21, 2015. Various posttrial motions were filed, which we will address as needed in the analysis below.

Nathan testified at trial that he was 39 years old and had a bachelor's of fine arts from the Art Institute of Chicago. Since his graduation, Nathan has always worked as a professional photographer. Nathan testified that he was offered a position at Land of Nod, a business selling home goods, textiles, and toys marketed towards children, on March 8, 2011. The position was a full-time salaried position with an annual income of $55,000.00. Nathan accepted the position on March 18, 2011. Nathan did not tell Kara about the employment offer or his acceptance prior to April 11, 2011, the date of their divorce. Nathan testified that he represented he was unemployed on the date of the divorce.

Nathan began his employment with Land of Nod on May 3, 2011. Nathan worked for the company by taking photos for their websites, catalogs, and other promotional photos. Nathan testified that he underwent an employment evaluation on January 11, 2013. Nathan was informed that he repeatedly displayed negative behavior, had angry outbursts, and could not control his temper. Nathan was informed that if he did not correct these behaviors, he would be terminated without further notice. After a disagreement with a supervisor, Nathan was terminated from his position from Land of Nod on August 30, 2013. Nathan testified that he received two weeks' severance pay. Nathan then applied for and received unemployment benefits until November 2013.

The district court received Exhibits 61 and 63, which were the depositions of Barbara Kramer and Sue Cortesi. Kramer was the "manager of photo producer" at the Land of Nod at the time of Nathan's termination. Cortesi was the director of human resources at Land of Nod at the time. Kramer testified that she was Nathan's manager. Kramer testified that she conducted performance reviews with Nathan during his employment. Kramer testified that during performance reviews Kramer noted concerns about Nathan's attitude and anger issues, and informed Nathan that if he did not change his behavior, he would be terminated. Kramer testified that the most recent performance evaluation where Nathan was informed of these issues was March 5, 2013. Kramer testified that she was not working the day Nathan was terminated. Cortesi testified that she was present during Nathan's termination. Cortesi testified that she provided managerial support during Nathan's termination.

Nathan testified that he was hired by Crate & Barrel in November 2013. Crate & Barrel and Land of Nod are both owned by the same parent corporation. Nathan's starting pay was $21.00 per hour and he worked 40 hours per week. In January 2014, Nathan was reassigned as a "seasonal short-term associate" with the company. His hourly pay was increased to $44.00 per hour, but his workable hours were capped at 1,000 hours per year. Nathan's taxable income was $53,853.00 for 2012, $50,559.00 for 2013, and $37,527.33 for 2014. Nathan testified that after he was terminated from Land of Nod, he never applied for a full-time position. Nathan has never looked for work outside of professional photography. He has worked on a sporadic basis as a freelance photographer. However, he has not actively marketed his photography business. He currently lives in Minnesota with his parents.

Kara testified that she is employed as a pastor. Kara receives health insurance through her employer. Kara has primary physical custody of the parties' son, Ronan. Before the parties were divorced, but during their separation, they took Ronan to Dr. Tim Riley, a child therapist. Ronan was diagnosed with attention deficit hyperactivity disorder (ADHD) after meeting with Dr. Riley. Around December 2011, Dr. Riley additionally diagnosed Ronan with Asperger's Syndrome,

which falls within the autism spectrum. Three other doctors have diagnosed Ronan with Asperger's Syndrome, including Dr. Judith Bothern. Ronan received treatment with Dr. Bothern for nearly a year after the divorce, then resumed treatment with Dr. Riley thereafter. Dr. Riley was not in Kara's insurance network, but the original decree allowed Kara to seek out of network treatment, if necessary.

Ronan has been prescribed Concerta, a medication for his ADHD. For his Asperger's syndrome, Ronan has required treatment in the form of neurofeedback. Dr. Riley is the person that performs this treatment, which involves connecting electrodes from a cap on the child's head to an electroencephalograph to monitor how the child's brain is processing different stimuli. The goal of neurofeedback is to develop long-term positive responses to external stimuli without the need for medication. Ronan began his neurofeedback therapy in January 2014. Ronan receives neurofeedback once per week, with the possibility of two sessions per week in the future. Kara testified that the therapy costs $120 per session, and is not covered by insurance. Kara testified that she believes Ronan has absolutely benefitted from neurofeedback.

Kara testified that she attempts to provide Ronan with in-network treatment whenever possible. Kara's employer switched insurance providers in 2014. Ronan had been prescribed Concerta every month since 2011, which cost $49.99 per month. In January 2014, Ronan was prescribed Clonidine, in addition to Concerta, for his ADHD. The Clonidine cost $2 per month when it was initially prescribed. When Kara's insurance provider was changed in July 2014, the out of pocket cost for Concerta increased to $245.00 per month while the Clonidine remained at $2.00 per month with the new insurer. After approximately 11 months, Kara was able to again change insurance companies, which dropped the cost of Concerta to $35.00 per month.

Since the parties' divorce, Kara testified that she has attempted to keep Nathan informed of all of Ronan's medical necessities. She testified that she had not received a single response from Nathan regarding her communications. Kara also testified that Nathan has never asked Kara questions about any of Ronan's treatments, medications, or medical providers. Nathan testified that he does not believe "the onus is on me" to inquire about Ronan's medical needs. Kara testified that she had submitted invoices to Nathan for medical and dental expenses, which have gone unanswered. Nathan testified that he does not believe the accuracy of the invoices Kara provides. Kara stated that she paid her alimony obligation through June 2012. Kara also stated that she stopped paying alimony in order to pay for Ronan's medical needs, as she could not afford to pay both obligations.

Following trial, the district court took the matter under advisement and entered an order on January 21, 2016. The district court ordered Nathan to pay child support in the amount of $616.00 per month. The court further ordered Nathan to pay 42 percent of the work-related childcare expenses. The district court found that Kara owed spousal support to Nathan in the amount of $2300.00. The district court found that Nathan owed $5,123.10 for his share of the unreimbursed medical expenses incurred. The district court ordered Nathan to pay Kara $2,832.10, which was the difference between Kara's unpaid spousal support obligation and Nathan's unpaid portion of the noncovered medical expenses for Ronan. The court awarded Kara $3,900.00 in attorney fees. Finally, the district court terminated Kara's spousal support obligation, effective November 30, 2012. Finally, the district court dismissed Nathan's contempt action against Kara.

## III. ASSIGNMENTS OF ERROR

Nathan assigns, consolidated, restated, and reordered, that the district court erred by (1) determining it had subject matter jurisdiction over the action; (2) sustaining and overruling various pretrial motions; (3) refusing to reduce Nathan's child support obligation; (4) terminating Kara's spousal support obligation; (5) ordering Nathan to contribute to childcare expenses; (6) entering judgment against Nathan for medical expenses; (7) refusing to hold Kara in contempt of court; (8) overruling various posttrial motions; and (9) ordering Nathan to pay Kara's attorney fees. Kara assigns on cross-appeal that the district court erred by failing to order Nathan to pay an upward deviation in child support in lieu of paying for his share of noncovered medical expenses.

## IV. STANDARD OF REVIEW

Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court. *Hopkins v. Hopkins*, 294 Neb. 417, 883 N.W.2d 363 (2016). A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Stephens v. Stephens*, 297 Neb. 188, 899 N.W.2d 582 (2017).

## V. ANALYSIS

### 1. NATHAN'S APPEAL

### (a) Jurisdiction

Nathan argues the district court lacked subject matter jurisdiction over the modification action because Kara failed to serve Nathan with the original complaint. Nathan argues that Kara's complaint was dismissed as a matter of course six months after it was filed. Nathan argues that as a result of Kara's lack of service upon him, the modification action should be dismissed for lack of subject matter jurisdiction.

When a jurisdictional question does not involve a factual dispute, the issue is a matter of law. *Kelliher v. Soundy*, 288 Neb. 898, 852 N.W.2d 718 (2014). An appellate court reviews questions of law independently of the lower court's conclusion. *Id.*

Neb. Rev. Stat. § 25-217 (Reissue 2016) provides, "An action is commenced on the date the complaint is filed with the court. The action shall stand dismissed without prejudice as to any defendant not served within six months from the date the complaint was filed." Neb. Ct. R. Pldg. § 6-1115 expands upon § 25-217:

A party may amend the party's pleading once as a matter of course before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted, the party may amend it within 30 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party, and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be longer, unless the court otherwise orders.

Nathan argues that we must look to the federal rule for guidance, and that under the federal rule, an amendment to an original pleading is prohibited until the opposing party has filed a responsive pleading. See, Fed. R. Civ. P. § 15(a). We disagree as the federal rule is not substantially similar to the Nebraska rule. Upon our review, it is clear that Neb. Ct. R. Pldg. § 6-1115 allows a party to amend its pleading once as a matter of course before a responsive pleading is served. Here, Nathan did not serve a responsive pleading to the original complaint for modification, which was filed on July 18, 2012. Kara filed an amended complaint for modification on October 23, 2012. The amended complaint was served on Nathan on November 20, 2012. Not only did Nathan receive service within six months of the amended complaint, he was served within six months of the original complaint. Therefore, we find the district court did not err in retaining jurisdiction over the modification.

(b) Pretrial Motions

Nathan argues the district court erred in sustaining and overruling a litany of pretrial discovery motions. Nathan also argues that the district court erred in denying his motion for judgment on the pleadings. He also argues that the district court erred by granting a motion to continue filed by Kara.

Decisions regarding discovery are directed to the discretion of the trial court, and will be upheld in the absence of an abuse of discretion. *Moreno v. City of Gering*, 293 Neb. 320, 878 N.W.2d 529 (2016). The party asserting error in a discovery ruling bears the burden of showing that the ruling was an abuse of discretion. *Id.* An appellate court reviews a judge's ruling on a motion to continue for an abuse of discretion. *Id.* A motion for judgment on the pleadings is properly granted when it appears from the pleadings that only questions of law are presented. *In re Trust Created by Hansen*, 274 Neb. 199, 739 N.W.2d 170 (2007).

The main purpose of the discovery process is to narrow the factual issues in controversy so that the trial is efficient and economical. *Hill v. Tevgot*, 293 Neb. 429, 879 N.W.2d 369 (2016). The discovery process helps the litigants conduct an informed cross-examination and avoid tactical surprise, a circumstance which might lead to a result based more on legal maneuvering than on the merits of the case. *Id.* Nathan argues, among other things, that the district court erred in ordering Nathan to respond to discovery requests, ordering telephonic depositions, and granting a motion to continue trial.

Kara sought discovery related to Nathan's employment history subsequent to the decree of dissolution. Kara sought these records in order to demonstrate that a material change in circumstance had occurred because Nathan had gained meaningful employment which was not disclosed at the time of the initial decree. The district court ordered Nathan to provide responsive answers to Kara's requests for admissions and ordered the telephonic depositions of Kramer and Cortesi. Our review of the record reveals the district court ordered Nathan to reply to discovery requests because Nathan was not responding in a manner that would allow the parties to narrow the factual issues in controversy for trial. The district court ordered the trial be continued in order for the discovery to be completed. Upon our review of the record, Nathan has failed to show that any pretrial ruling by the district court constituted an abuse of discretion.

As for the ruling on the motion for judgment on the pleadings, Neb. Rev. Stat. § 42-365 (Reissue 2016) states "[u]nless amounts have accrued prior to the date of service of process on a petition to modify orders for alimony may be modified or revoked for good cause shown." The timing of the service of process affects the modification of alimony payments. The amended complaint was served on Nathan on November 20, 2012. Consequently, the district court had the authority to revoke un-accrued alimony payments from the date of service of process, November 20, 2012, going forward for good cause shown. The district court properly denied the motion for judgment on the pleadings because questions of fact existed.

### (c) Child Support Obligation

Nathan argues the district court erred in not reducing his child support obligation from $616.00 per month to $459.00 per month. Nathan argues that he has demonstrated a material change in circumstances since the entry of the last modification order due to his termination from a higher paying job, his mounting costs of litigation, and the time he has taken time off from work in order to care for his ill mother.

The Nebraska Supreme Court has held that when a party requesting a modification of child support has experienced a reduction in income due to his or her own wrongdoing, that party is not entitled to have the request for modification granted. *Incontro v. Jacobs*, 277 Neb. 275, 761 N.W.2d 551 (2009). In *Incontro*, the father voluntarily relinquished his interests in a business. *Id.* The Nebraska Supreme Court determined that the father's income decreased due to his own personal wishes, and not as a result of unfavorable or adverse conditions in the economy, his health, or other circumstances that would affect his earning capacity. *Id.*

The record is clear that Nathan was warned prior to his termination that if he did not change his behavior, he would be terminated without further notice. Additionally, Nathan testified that he was busy enough working the part-time hours he currently worked. The district court found that Nathan experienced a reduction in income due to his own wrongdoing and denied Nathan's request for a reduction of his child support obligation. Upon our review of the record, we find that the district court did not abuse its discretion in failing to reduce Nathan's child support obligation.

### (d) Contribution to Childcare Expenses

Nathan argues the district court erred by ordering him to contribute to childcare expenses because Kara did not demonstrate a material change in circumstance since the previous modification order of January 2012. Nathan argues that since Kara requested a modification of her work-related childcare expenses in her first complaint for modification, and the January 2012 modification order was silent with respect to childcare expenses, Kara must demonstrate a material change in circumstance from the time of the prior modification order.

The case of *Metcalf v. Metcalf*, 278 Neb. 258, 769 N.W.2d 386 (2009), best addresses the circumstances where as here, a prior modification was attempted, but was unsuccessful. In *Metcalf*, Kenneth Metcalf sought to reduce his spousal support obligation a second time after the district court rejected his first attempt to do so. The district court found that Kenneth was required to demonstrate that a material change of circumstance had occurred since the prior order was entered

denying modification. A divided panel of this court affirmed that decision. *Metcalf v. Metcalf*, 17 Neb. App. 138, 757 N.W.2d 124 (2008). The Nebraska Supreme Court affirmed as follows:

> We determine that in cases where there has been a previous attempt to modify support, the court must first consider whether circumstances have changed since the most recent request for modification. But when considering whether there has been a material and substantial change in circumstances justifying modification, the court will consider the change in circumstances since the date of the last order establishing or modifying [spousal support]. In other words, a judgment for [spousal support] may be modified only upon a showing of facts or circumstances that have changed since the last order granting or denying modification was entered. But once some change has been established since the last request, the analysis focuses on the change in circumstances since [spousal support] was originally awarded or last modified. We adopt this rule because it recognizes the force of res judicata; modification will be considered only when there has been a change in circumstances since the last request for modification. But if there has been no change, modification is not justified, because the request is essentially the same as the last request.

278 Neb. at 266, 769 N.W.2d at 392.

Applying this two part analysis to the present case leads us to conclude that the district court did not abuse its discretion in determining that Nathan should be required to pay a portion of Ronan's childcare expenses. First, we note that payment of childcare expenses do lie in the nature of support and are addressed in § 4-210 of the Nebraska Child Support Guidelines. Next, we note that in Kara's June 16, 2011, complaint for modification she did request that Nathan contribute to Ronan's childcare expenses. Unfortunately, the record is unclear regarding the circumstances surrounding that action. The complaint to modify filed June 16, 2011, alleged only generally that "the parties' incomes have changed such that application of the Nebraska Child Support Guidelines would result in a variation by 10 percent or more upward of the current child support obligation. . . ." No specific allegations of fact are made. The complaint prays for an increase in child support and the establishment of a childcare obligation for Nathan. Nathan did not answer or appear at the modification trial which took place in front of a referee. Following the hearing, the district court entered an order finding that a material change in circumstance had been proven, but mimicked the general language of the complaint as to the factual basis for its findings. We note that the order was drafted by Kara's former counsel. No finding was made as to the specific facts adduced that supported the court's findings. The court then went on to raise Nathan's child support obligation from $156.00 to $616.00 per month. However, the order was silent with regard to childcare expenses.

This lack of a record makes our analysis more difficult, but not impossible. From the evidence adduced at trial on the present complaint to modify, it is apparent that the June 2011 complaint was filed upon Kara becoming aware that Nathan had found employment. The property settlement agreement incorporated into the decree of dissolution contemplated that child support and childcare expense would be revisited upon Nathan obtaining employment and it appears Kara acted upon learning of Nathan's job with Land of Nod.

We are unsure of why an award of childcare was not awarded in the first modification action given that (1) evidence would have existed to support it; and (2) Nathan did not contest that proceeding. Nonetheless, pursuant to the holding in *Metcalf*, Kara must demonstrate a material change in circumstance since her last attempt to modify Nathan's childcare obligation in order to receive relief. We find that she has done so. First, the evidence received at trial demonstrates that while Kara became aware of Nathan's acquisition of employment shortly after the original decree was entered, she did not become aware that Nathan had accepted that employment prior to signing the property settlement agreement that recited that he was unemployed. That information first became known to her through discovery in the present action. Second, the evidence adduced at trial herein demonstrated that Ronan's medical condition will require ongoing treatment and that due to his condition, he will require continued childcare services. Ronan was born in 2004 and is of such an age that his need for childcare would normally be reaching its end. However, the testimony was clear that his safety cannot be assured if he is left unattended. Therefore, we believe that the record does demonstrate a material change in circumstance not known or contemplated at the time of the prior modification order. The evidence presented at trial demonstrating that this extended period of childcare would be required is a new development which would not have been known or presented at the time of the first modification trial and the January 2012 modification order.

Having found that a material change in circumstance has occurred since the last order of modification was entered, we next address the change in circumstances since no division of childcare expenses was ordered in the original decree. We again note that the modification order was silent on this issue. At the time of the decree, the district court was under the impression that Nathan did not have and had not secured employment. The evidence at trial herein demonstrated that Nathan has had gainful employment and maintains an earning capacity at least equal to that which he had had when he worked for Land of Nod. Therefore, we cannot find that the district court abused its discretion in finding that Nathan should pay a share of the childcare expenses incurred by Kara. We further find that the district court did not abuse its discretion in determining the amount to be paid or setting the effective date of this obligation.

(e) Termination of Spousal Support

Nathan argues the district court erred in terminating Kara's spousal support obligation since she failed to prove a material change in circumstance since the entry of the previous modification order in January 2012. Nathan also argues that the district court erred in terminating Kara's spousal support obligation because she willfully refused to pay her obligation. Nathan argues that this is tantamount to "unclean hands."

A judgment for spousal support may be modified only upon a showing of facts or circumstances that have changed since the last order granting or denying modification was entered. *Metcalf, supra*. But once some change has been established since the last request, the analysis focuses on the change in circumstances since spousal support was originally awarded or last modified. *Id.* Modification will be considered only when there has been a change in circumstances since the last request for modification. *Id.*

Kara did not request modification of her spousal support in her prior complaint for modification in June 2011. At the time of the entry of the initial decree in April 2011, Nathan had represented that he was unemployed. In the June 2011 action, Kara only requested an increase of Nathan's child support, as well as an increase in Nathan's obligation for work-related childcare expenses. Ultimately, the uncontested modification order entered in January 2012 only modified Nathan's child support obligation. Therefore, the current modification of spousal support can focus on a material change in circumstances between the initial decree in April 2011 and Kara's second amended complaint filed on August 2, 2013. The district court determined that good cause existed to terminate Kara's spousal support obligation effective November 30, 2012. Upon our review, we find that the district court did not abuse its discretion in terminating Kara's spousal support obligation.

With respect to Nathan's "unclean hands" argument, the Nebraska Supreme Court has stated, "[u]nder the doctrine of unclean hands, a person who comes into a court of equity to obtain relief cannot do so if he or she has acted inequitably, unfairly, or dishonestly as to the controversy in issue." *Manker v. Manker*, 263 Neb. 944, 644 N.W.2d 522 (2002). The district court did not address Nathan's unclean hands argument in its order. However, our record demonstrates that Nathan represented to the district court before the entry of the initial decree that he was unemployed. Nathan had signed the decree stating as much, but had already accepted an offer of employment from the Land of Nod. His representation to Kara and the court that he was unemployed can only be reasonably viewed as deception. Nathan intentionally misrepresented his employment in order to reduce his child support obligation and to obtain spousal support from Kara. Nathan's claim of unclean hands on Kara's part is simply without merit as his own deceptive conduct set into play the course of events leading to Kara's inability to pay her spousal support obligation. This is particularly true given Nathan's failure to pay his share of Ronan's medical expenses.

(f) Judgment for Medical and Dental Expenses

Nathan argues that the district court erred by ordering him to pay for past medical and dental expenses for Ronan. Nathan argues that since Kara did not provide him with invoices twice yearly, as required by the initial decree, the district court erred by ordering him to pay for the expenses.

The initial decree required Nathan to pay for one-half of noncovered medical and dental expenses incurred on behalf of Ronan after Kara paid the first $480.00 of said medical bills per year. The district court received into evidence Exhibits 57 and 74, which detailed Ronan's numerous medical bills since the date of the decree. Kara testified that she attempted to communicate with Nathan about Ronan's medical needs and initially provided information on medical costs, but her efforts were largely ineffective. Nathan agreed that he should provide for Ronan's medical care, but that the onus to engage on the subject with Kara should be on Kara. Nathan argues that since Kara has not provided him the requisite documentation ordered in the initial decree, he should not be required to pay for the expenses. However, nothing in the decree relieves Nathan of his obligation pay these expenses based on Kara's failure to provide documentation of the expenses in a timely manner. Upon our review of the record, we find that

the district court did not abuse its discretion in ordering Nathan to pay for unreimbursed medical and dental expenses incurred on Ronan's behalf. The testimony and documentary evidence demonstrates that Kara actually incurred these expenses and that she attempted to communicate with Nathan, but to no avail. Therefore, we find that district court did not abuse its discretion.

### (g) Dismissal of Show Cause Order

Nathan argues the district court erred in dismissing the order to show cause against Kara because she willfully failed to pay her spousal support obligation and failed to notify Nathan prior commencing healthcare for Ronan.

A party is not in contempt of court for a failure to comply with an order directing them to pay money unless it is shown that they had sufficient ability to pay, and that their refusal was willful, contumacious, and without just and reasonable grounds. *Malec v. Malec*, 196 Neb. 533, 244 N.W.2d 82 (1976). Kara testified that she could no longer pay spousal support and pay for Ronan's required medical care. Kara also testified that she was unable to effectively communicate with Nathan because she could not reach him or he would not engage with her on the subject. The district court determined that Kara's failure to pay her spousal support obligation was not willful. While we do not condone a party refusing to pay their spousal support obligation, we find that given the evidence adduced the district court did not abuse its discretion in determining Kara's failure was not willful or contumacious. Similarly, we find that given the evidence adduced, the district court did not abuse its discretion in determining that Kara was not in willful and contumacious contempt of the decree regarding parental communication.

### (h) Motion to Recuse

Nathan argues the district court erred by failing to recuse itself because the district court judge in this case had filed a complaint with the counsel for discipline against Nathan's attorney. Nathan also argues the district court erred by failing to recuse itself because Kara's attorney during the trial was appointed to the district court bench while the case was submitted to the court.

First we note that the motion to recuse was made after the district court entered the modification order on January 21, 2016, and its order nunc pro tunc on January 26, 2016. The motion was made orally at the beginning of a hearing held on February 26, 2016, on Nathan's motion for a new trial and Kara's motion to alter or amend. Counsel for Nathan was allowed to proceed on the oral motion. Evidence consisting of copies of a letter written by the trial judge to the counsel for discipline dated February 5, 2016, the written notice of investigation sent by the counsel for discipline to Nathan's counsel dated February 12, 2016, and the written response of Nathan's counsel to the counsel for discipline dated February 17, 2016, were received. These were received as Exhibits 79 through 81. The oral motion to recuse sought only to recuse the initial trial judge from hearing the posttrial motions on file. The district court took the motion under advisement and then issued a written order on March 4, 2016, denying the motion to recuse. On March 18, 2016, the parties' motions were heard. Both parties' motions were overruled by way of written order entered August 16, 2016.

In *Blaser v. County of Madison*, 285 Neb. 290, 826 N.W.2d 554 (2013), the Nebraska Supreme Court stated:

The Nebraska Revised Code of Judicial Conduct requires that "[a] judge shall hear and decide matters assigned to the judge, except when disqualification is required. . . ." The code goes on to state that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned. . . ." We have previously stated that a trial judge should recuse himself or herself when a litigant demonstrates that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice is shown.

285 Neb. at 299-300, 826 N.W.2d at 526 (citations omitted).

We note that the district court sealed Exhibits 79-81 which we have unsealed, reviewed, and then resealed. We note that the letter from the district judge to the counsel for discipline is not labeled as a complaint, nor does it concern any actions of counsel in this matter. It begins by saying, "I feel that I must advise you of a recent incident occurring in my courtroom," and ends by recounting that the judge believed he had a duty to report the incident, but left any disposition of the matter "to the Counsel's discretion."

In our review of the exhibits, we see no reason to question the trial court's determination that recusal was not required. There is no indication of bias or prejudice on the part of the trial court in the record nor is there any basis to believe that the court's impartiality as to this case had been or would be affected by counsel's action in a separate case. We cannot find that a reasonable person hearing the circumstances of the case would question the judge's impartiality.

Nathan also argues the district court erred by failing to recuse itself because Kara's attorney during the trial was appointed to the district court bench while the case was submitted to the court. We first note that this issue was not raised before the district court. However, our review of the case law does demonstrate that the Nebraska Supreme Court has substantively reviewed issues of recusal raised for the first time on appeal. See, *Blaser, supra*. Neb. Rev. Stat. § 24-739 (Reissue 2016) provides that a judge is automatically disqualified where the judge acted as an attorney for either party in an action or proceeding. This is not the case before us. Nathan cites no case law, and we can find none, which prohibits a court from sitting on a case upon which a current colleague had previously acted as an attorney for a party. Therefore, we find the district court did not abuse its discretion by refusing to recuse itself.

(i) Attorney Fees

Nathan argues the district court erred in awarding Kara attorney fees. Nathan also argues the district court erred in not ordering Kara to pay a portion of Nathan's attorney fees.

In an action for modification of a decree for dissolution, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. *Furstenfeld v. Pepin*, 23 Neb. App. 673, 875 N.W.2d 468 (2016). The award of attorney fees depends on multiple factors that include the nature of the case, the services performed and results obtained, the earning capacity of the parties, the length of time required for preparation and presentation of the case, customary charges of the bar, and the general equities of the case. *Burcham v. Burcham*, 24 Neb. App. 323, 886 N.W.2d 536 (2016).

Upon our de novo review, we find the district court did not abuse its discretion in awarding attorney fees to Kara and denying attorney fees to Nathan. Nathan's conduct in this matter most certainly extended the length of the trial court proceedings, as well as the time and effort required by Kara's counsel. Many of the issues raised in this appeal would have been avoided had Nathan informed Kara of his acceptance of employment at the time of the entry of the original decree. Under the general equities of the case, including Nathan's conduct leading up to and following the entry of the decree support the district court's decision.

### 2. KARA'S APPEAL

Kara argues that the district court erred in refusing to order an upward deviation from the Nebraska Child Support Guidelines in order to pay for the extraordinary medical costs incurred by the parties' minor child.

Kara cites to *Hoover v. Hoover*, 2 Neb. App. 239, 508 N.W.2d 316 (1993), which analyzes deviations from the child support guidelines. We quoted Paragraph C, (now § 4-203) of the guidelines, which provides in part:

> In the event of a deviation, the reason for the deviation shall be contained in the findings portion of the decree or order; or worksheet 5 should be completed by the court and filed in the court file. Deviations from the guidelines are permissible under the following circumstances:
> 1. when there are extraordinary medical costs of either parent or child;
> 2. when special needs of a disabled child exist. . . .

We went on to reason as follows:

> As we review the guidelines in conjunction with the applicable sections of the child support statutes, we believe a reasonable interpretation requires us to find that past expenses, such as for medical care and other reasonable and necessary expenses, are to be considered in the modification of the amount of child support payable in the future. Deviations from the guidelines are also permitted "whenever the application of guidelines in an individual case would be unjust or inappropriate." Thus, deviation from the guidelines to provide for a percentage of future expenses incurred is permissible in individual cases when strict adherence to the guidelines would be unjust or inappropriate.

*Id.* at 246-47, 508 N.W.2d at 321-22 (citation omitted).

We concluded that the trial court's decision was supported by the record, particularly given the parties' agreement at oral argument that if the father in that case was to be made responsible for future unreimbursed medical expenses, said expenses would be paid by way of an upward deviation in child support in lieu of a percentage of the actual expenses. Under our de novo review of the record, we find the district court did not abuse its discretion in denying Kara's request for an upward deviation from the child support guidelines. We first note that there is no agreement between the parties for Nathan to pay increased child support in lieu of his share of unreimbursed medical expenses. Second, we note that while Nathan has not stepped up to pay his share of

medical expenses voluntarily, Kara has not consistently provided him with proof of these expenses along with payments made by herself and her insurance carriers. Therefore, while we do not condone Nathan's laissez-faire approach to Ronan's healthcare needs, we cannot say that the trial court at this juncture should have required him to pay increased child support in lieu of future reimbursements for medical expenses incurred.

## VI. CONCLUSION

We find that the district court did not err by determining it had jurisdiction over the action. The district court did not err by sustaining and overruling various pretrial motions. We find that the district court did not err by refusing to reduce Nathan's child support obligation. Additionally, we find that the district court did not err by terminating Kara's spousal support obligation. The district court did not err by ordering Nathan to contribute to childcare expenses. We find that the district court did not err by entering judgment against Nathan for medical expenses. The district court did not err by refusing to hold Kara in contempt of court. We find that the district court did not err by overruling Nathan's motion to recuse the district court judge. We find that the district court did not err by ordering Nathan to pay Kara's attorney fees. Finally, we find that the district court did not err by failing to order Nathan to pay an upward deviation for his share of noncovered medical expenses.

AFFIRMED.